# GEORGE PARKER *vs.* THE STATE OF MARYLAND.

*Intoxicating Liquor—Statute Prohibiting the Giving Away of Liquor— Negativing Exceptions in Indictment.*

The Act of 1902, ch. 265, made it unlawful for any person in a certain country district to sell or give away any spirituous or fermented liquor. *Held*, that the Act is not unconstitutional, although it does not in express terms except from its operation the giving of liquor by a private citizen in his own house to a guest or member of his family.   The Act is not to be construed as prohibiting such giving away of liquor.

A subsequent section of the above-mentioned Act prohibiting the sale or giving away of liquor, declared that it should not be construed to prevent the sale of liquor for medicinal purposes by a regular licensed pharmacist. *Held,* that in an indictment for the violation of the statute by the defendant, it is not necessary to aver that he was not a licensed pharmacist, because the general rule is that when a criminal statute contains an exception in a clause thereof subsequent to that containing the prohibition, the indictment need not negative the exception, but that is matter of defense.

Appeal and writ of error from the Circuit Court for Talbot County (MARTIN and BROWN, JJ.)

The title of the Act of 1902, ch. 84, is: "An Act to repeal sec. 127 of Art. 21 of the Code of Public Local Laws of Maryland, title 'Talbot County,' sub-title 'Liquors and Intoxicating Drinks,' as amended by ch. 156, Acts of 1896, and to re-enact the same with amendments, and to add two additional sections to said Art. 21 to follow sec. 127 and to be designated as secs. 127A and 127B relating to the sale of spirituous and fermented liquors, or lager beer, or other intoxicating liquors, in the Fourth or Chapel District of Talbot County."

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Joseph B. Seth* and *Isaac Lobe Straus,* for the appellant.

Secs. 127 and 127A of the Act of 1902 are sweeping and unbounded in their scope, they provide that "*any* person," who "*gives* away" at "*any* place" *any* intoxicating liquor to another person, shall be fined not less than fifty nor more than three hundred dollars, together with the costs of prosecution, *and* be imprisoned for not less than three months nor more than six months. The Act does not except but clearly includes the homes of private citizens and the members of their families and also their guests within their homes.

Such an Act is plainly unreasonable, arbitrary and oppressive. It invades the best and dearest rights which the freemen of Maryland inherited from their English forefathers and

which are secured to them by immemorial principles of the common law. *Declaration of Rights*, Arts. 5 and 45. It invades their fundamental right of personal liberty, and the pursuit of happiness.

It invades their fundamental right of personal security. It invades the great maxim of the common law that every man's house is his castle. It invades the constitutional principle that the people shall be secure in their persons, houses and effects against unreasonable search and seizure. Declaration of Rights, Art. 26. It exposes the security and privacy of the houses of the people to an inquisitorial invasion, aided, no doubt, by a system of espionage and detection utterly hostile to the genius of our institutions. It violates Art. 16 of the Declaration of Rights, which asserts that "no law to inflict *unusual* pains and penalties ought to be made in any case or at any time hereafter," and also the spirit of Arts. 19 and 23 of that instrument. The personal rights and liberties of the people, their right to the pursuit of happiness and the privacy and security of their homes cannot be thus assailed under the cloak and guise of a "police" regulation.

No one denies the broad and plenary power of the State to abolish and destroy the liquor traffic, or to suppress the evils of intoxication by prohibiting the "giving" or "furnishing" of intoxicating beverages at certain *places*, such as public resorts and entertainments, election booths, or places where such drinks are manufactured or sold ; or at certain *times*, such as Sundays, legal holidays, election days, or other such occasions; or to certain *classes of persons*, such as inebriates, minors, lunatics, or persons actually drunk. Every statute on the subject which we have been able to find contains most of these limitations, or if not so expressly limited, contains explicit provisos excepting the *giving* of liquor by private citizens to the members of their household or their guests within their own homes. No statute without such limitations or exceptions has ever been tolerated. *Cearfoss* v. *State*, 42 Md. 403; *Parkinson* v. *State*, 14 Md. 184; *Powers* v. *Comm.*, 90 Ky. 167; *Altenburg* v. *Comm.*, 126 Pa. St. 602; *State* v. *Jones*,

39 Vermont, 374; *State* v. *Danforth*, 19 Atl. Rep. 229; *State*
v. *Hutchins*, 70 Iowa, 20; *Albrecht* v. *People*, 78 Illinois, 513;
*Comm.* v. *Carey*, 151 Pa. St. 371.

That being without such limitations or exceptions the Act
of 1902 is unconstitutional is clearly shown by the reasoning
of the Court in *Cearfoss* v. *State*, 42 Md. 403, and is also dis-
tinctly indicated in the case of *Altenberg* v. *Comm.*, 126 Pa.
St. 602.

See also *Comm.* v. *Powers*, 90 Ky. 107; *Wynehamer* v. *Peo-
ple*, 13 N. Y. 402; *West Va.* v. *Gilman*, 33 West Va. 146;
141 s. c., 6 L. R. A. 847; *In re Ah Jow*, 29 Fed. R. 181.

In *Albrecht* v. *People*, 78 Illinois, 513, the Court used all
the resources of construction to make a prohibition against
giving away intoxicating liquors to drunken persons, applica-
ble only to dram shop-keepers, and said :

"If one invites his friends to dine with him, and generous
wine which cheers the heart is pressed upon the guests, one
of whom happened to be excited with wine when he came
there, is the host to be incarcerated for giving to this most
bibulous guest an additional glass? We do not think the
statute should bear such a construction. The culture of the
grape is recommended by the moralist and the economist, and
the expression of its juices into wine. Would it be an offense
punishable by fine and imprisonment, should the vintner from
his wine press fill a flagon and serve it to his guests in his
own house, at his table? Where is the difference in a brewer
presenting a tankard under similar circumstances. We cannot
believe that this law was designed to punish such acts." See
also *State* v. *Standish*, 37 Kansas, 647; *Com.* v. *Carey*, 151
Pa. St. 371.

In *Herman* v. *State*, 8 Ind. 558, the Court said : "The right
of liberty and pursuing happiness secured by the Constitution,
embraces the right in each *compos mentis* individual of select-
ing what he will eat and drink, in short, his beverages, so far
as he may be capable of producing them or they may be
within his reach, and the Legislature can not take away that
right by direct enactment. If the Constitution does not secure

this right to the people, it secures nothing of value. If the people are to be controlled by the Legislature in the matter of their beverages, so they are as to their articles of dress and their hours of sleeping and waking and if the people are incompetent to select their own beverages, they are also incompetent to determine anything in relation to their living and should be placed at once in a state of pupilage to a set of government sumptuary officers, and the doctrine of the competence of the people for self-government be declared a deluding rhetorical flourish."

The contenton on the part of the State is that such an Act as that of 1902 may be passed and enforced under the "police power" of the State. The police power must be exercised reasonably and subject to the provisions of both the State and Federal Constitutions. 22 *Ency. of Law*, p. 937.

Police laws and regulations for the protection of the health, morals and safety of society *must be reasonable, and what are reasonable regulations and what are subjects of police power must be necessarily judicial questions.* *Long* v. *State*, 74 Md. 572; *Singer* v. *State*, 72 Md. 466, 467; *Luman* v. *Hitchens*, 90 Md. 14, 27; *State* v. *Hawkins*, 95 Md. 142, 144; *Ency. of Law*, 2 ed., vol. 22, pp. 935–6, title Police Power, sub-title, Limitations on Its Exercise; *Deems* v. *Baltimore*, 80 Md. 174; *Radecke* v. *Baltimore*, 49 Md. 230.

The character of police regulations, whether reasonable, impartial and consistent with the Constitution and the State policy is a question for the Courts, for the police power is too vague, indeterminate and dangerous to be left without control, and hence the Courts have ever interfered to correct an unreasonable exertion or a mistaken application of it; and when the Legislature passes an Act which plainly transcends the limits of the police power of the State, it is the duty of the judiciary to pronounce its invalidity and to nullify the legislative attempt to invade the citizens' right, for to hold that every Act of the General Assembly passed under the guise of an exercise of the police power, or sought to be defended upon that ground was beyond judicial control, would render every

guarantee of personal right found in the Constitution of little or no value. 22 *Ency. of Law*, pp. 936–37; *City of Clinton* v. *Phillips,* 58 Ill. 102, 103–4; *R. R. Co.* v. *Jacksonville,* 67 Ill. 37, 40; *Altenberg* v. *Comm.,* 126 Pa. St. 602; *In re Ah Jow,* 29 Fed. R. 181, *West Virginia* v. *Gilman,* 33 W. Va. 146; *Lake View* v. *Cem. Co.,* 70 Ill. 198–9; *Ex parte Smith,* 135 Mo. 223; *St. Louis* v. *Roche,* 128 Mo. 541, 546–8; *People* v. *Gillson,* 109 N. Y. 398, etc.; *Matter of Jacobs,* 98 N. Y. 98; *People* v. *Marx,* 99 N. Y. 377; *Milliken* v. *City Council,* 54 Texas, 393–4; *Moore* v. *Dist. of Columbia,* 12 App. Case, 541–2, per Alvey, Ch. J.; *Mayor* v. *Winfield,* 27 Tenn. 707; *Briggs* v. *Hunton,* 87 Maine, 151. *Ruhstrat* v. *People,* 185 Ill. 133.

The indictments are invalid in that they fail to negative the exceptions contained in the statute on which they are founded and thereby bring the appellant within its provisions. The exceptions contained in sec. 127B of the Act are substantial ingredients in the description or definition of the crime which it creates. The Act cannot be *read* without the exceptions of that section, which states that "nothing contained in this Act shall be construed to prevent the compounding and sale of *such* liquors" (*i. e.,* the liquors referred to in sections 127 and 127A) "for medicinal purposes by a regular pharmachist or druggist having a license, etc."

The whole context of the statute plainly shows that the exceptions in sec. 127B are part of the legislative description of the thing intended to be prohibited. If on reading the Act the exception is omitted, it is true a crime might still be created by it, but it is equally true that it would in that case be an entirely different crime from the one created by the Act read with the exceptions of sec. 127B in it.

The offense charged by the State is purely a statutory one. It is created by the Act in question. Unless the exception in the Act is denied in the indictment, the guilt of the accused would not and could not conclusively appear. *It does not conclusively appear in the indictment in this case.*

The verdict in this case does nothing more than verify the

facts charged in the indictment, and if these do not conclusively show the accused to be guilty, as they manifestly do not, he can not be considered guilty of violating the statute. Under the exception the defendant might be innocent, although every allegation in the indictment against him be true and fully proved; and it is not necessary for him to aver or prove any defense until it is charged that he is guilty of what the statute under which he is prosecuted, condemns.

The decisions in Maryland fully sustain this contention of the appellant and under the rules repeatedly laid down by this Court there can be no doubt as to the necessity of negativing the exception in question, *Kiefer* v. *State*, 87 Md. 562; *Bode* v. *State*, 7 Gill, 326; *Kellenbeck* v. *State*, 10 Md. 438–9; *State* v. *Nutwell*, 1 Gill, 54; *Barber* v. *State*, 50 Md. 170; *Stearns* v. *State*, 81 Md. 341; *Franklin* v. *State*, 12 Md. 249; *Parkinson* v. *State*, 14 Md. 184; *Kearney* v. *State*, 48 Md. 24; *State* v. *Elborn*, 27 Md. 483.

*William S. Bryan, Jr., Attorney-General* and *J. H. Covingington*, for the appellee.

If it were material for the purposes of this demurrer to determine whether the intent of the statute was to prohibit the use of liquor in the prescribed district for the ordinary purposes of hospitality at a gentleman's dinner table, or at a gentleman's sideboard in his home, to his personal guests and friends, it might be argued with much force that the law was not intended to apply to such cases; that dispensing hospitality in one's own home to one's *bona fide* guests and friends, was not, in the usual use of language, described as *giving away* liquor; and that the statute was meant to do away with the great practical difficulty, which sometimes arises, of proving a technical *sale*, by a person unlawfully dealing in liquor. *Albrecht* v. *People*, 78 Ill. 510; *Cearfoss* v. *State*, 42 Md. 403; *Bishop on Statutory Crimes*, sec. 1012. If the interpretation to be placed on the law in this regard would affect the constitutional validity of the statute, the Court would so construe the statute as to make it constitutional; there being a pre-

sumption that the Legislature did not intend to pass an unconstitutional statute. *Temmick* v. *Owings*, 70 Md. 251; *Gordon* v. *M. & C. C.*, 5 Gill, 241; *Hooper* v. *California*, 155 U. S. 657.

But it is maintained by the State, broadly, that it was within the police power of the State for the Legislature to prohibit either throughout the entire State, or in any portion of it, not only the giving away to others, but the having in possession, or using, liquor in any form.

That the liquor traffic is a proper subject for the exercise by the legislative branch of the government of those discretionary powers of regulation and control called for convenience the police power, is not any longer a subject of debate. *Mugler* v. *Kansas*, 123 U. S. 662.

In *Mon Luck* v. *Sears*, 31 L. R. A. 738, the Supreme Court of Oregon upheld a statute making it criminal *to have in possession opium* without having a license therefor, or without having obtained it on the prescription of a physician or pharmacist for medicinal purposes. It was held that such unauthorized possession of opium may be made a criminal offense in the discretion of the Legislature without violating any constitutional right.

In the familiar case of *Lawton* v. *Steele*, 152 U. S. 136, MR. JUSTICE BROWN, after giving a long list of regulations by the Legislature, held to be within the police power, adds: "Beyond this, however, the State may interfere wherever the public interests demand it, and in this particular *a large discretion is necessarily vested in the Legislature* to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests." The mere fact that a police regulation is unwise or foolish, or unnecessarily oppressive, furnishes no objection to the constitutional validity of the statute. *State* v. *Harrington*, 34 L. R. A. 104; *Powell* v. *Pennsylvania*, 127 U. S. 686.

In *Atkin* v. *Kansas*, 191 U. S. 207, the Supreme Court held valid a statute of Kansas prohibiting laborers working for contractors on municipal work, to labor more than eight hours a day.

When it is remembered that the purpose of the State throughout in regulating the liquor traffic is not to prevent the dealer from making a profit by the sale of liquor, but is to prevent the person drinking the liquor from being injured by its *use*, it is difficult to understand why just as great objections might not exist in the judgment of the Legislature to *giving away* liquor as to *selling* it.    Drinking liquor *given* to persons addicted to excessive drinking will obviously have just as injurious an effect upon them, and through them, upon the community, as drinking liquor *sold* to them.    Every one would agree that it would be proper to make it highly penal to *give* liquor to very young children; 'the difference in the injurious effect of giving liquor to such children, and to grown persons who can not control their appetites, and who are addicted to an excessive use of liquor, is a difference in *degree* and not in *kind*.

Prohibiting *giving away* liquor by statute is not an infrequent thing.    *Dalhmer* v. *State*, 56 Miss. 789; *Williams* v. *State*, 48 Indiana, 306; *Albrecht* v. *People*, 78 Ill. 510; *Cearfoss* v. *State*, 42 Md. 403; *Parkinson* v. *State*, 14 Md. 184.

Not only is within the governmental legislative discretion of the State to prohibit *giving away* liquor or other articles held to be injurious to the public health, the public welfare or the public morals, but the *possession* of such offending thing may be prohibited, and it may be treated *as an outlaw* in which there is no right of property, and it may be summarily destroyed without giving or tendering compensation to its possessor.    *Mugler* v. *Kansas*, 123 U. S. 623, 671; *Deems* v. *Baltimore*, 80 Md. 173; *Commissioners* v. *Wagner*, 93 Md. 191; *Mon Luck* v. *Sears*, 32 L. R. A. 958.

On analogous principles it has been held lawful for the State to prohibit having in possession game during the closed season.    *Stevens* v. *State*. 89 Md. 669.

· So far as is known, the present is the first instance where the validity of the statute has been questioned on that ground. As further illustrating the extent of the police power.    See *Porter* v. *City*, 70 Mississippi, 560; *Bittenhaus* v. *Johnson*, 32

L. R. A. 380; *State* v. *Aiken*, 26 L. R. A. 358, 359; *Stolz* v. *Thompson*, 44 Minnesota, 271; *In re Rahrer*, 140 U. S. 545, 555; *State* v. *Crescent Creamery Co.*, 54 L. R. A. 467; *New Orleans* v. *Faber*, 53 L. R. A. 165; *State* v. *Dow*, 53 L. R. A. 315; *State* v. *Griffin*, 41 L. R. A. 177; *State* v. *Harrington*, 34 L. R. A. 100; *State* v. *Orr*, 34 L. R. A. 279; *State* v. *Schlenker*, 51 L. R. A. 347; *Siffers* v. *Johnson*, 54 L. R. A. 785; *Rideout* v. *Knox*, 2 L. R. A. 81; *State* v. *Lewis*, 20 L. R. A. 52; *Ex parte Plessy*, 18 L. R. A. 639; *State* v. *Railroad*, 56 L. R. A. 287; *McDaniels* v. *Connelly*, 60 L. R. A. 947; *Wenham* v. *Nebraska*, 58 L. R. A. 825; *R. R.* v. *Paul*, 173 U. S. 404; *In re Ten Hour Law*, 61 L. R. A. 612; *Holden* v. *Hardy*, 169 U. S. 368; *Utah* v. *Sopher*, 60 L. R. A. 468; *Williams* v. *Fears*, 179 U. S. 270; *State* v. *Powell*, 41 L. R. A. 854; *Knoxville Co.* v. *Harbison*, 183 U. S. 13, 21; *Detroit Railway Co.* v. *Osborne*, 189 U. S. 383; *Austin* v. *Tennessee*, 179 U. S. 343; *Missouri* v. *Layton*, 127 U. S. 678; *Tennessee* v. *Cook*, 62 L. R. A. 174; *Jones* v. *Cody*, 62 L. R. A. 160; *Woods* v. *Armstrong*, 54 Alabama, 150; *State* v. *Broadbelt*, 89 Md. 585; *Stevens* v. *State*, 89 Md. 674; *State* v. *Knowles*, 90 Md. 646; *Sprigg* v. *Garrett Park*, 89 Md. 407, 411; *Easton* v. *Covey*, 74 Md. 262.

FOWLER, J., delivered the opinion of the Court.

The traverser, George Parker, was indicted on the 21st of May, 1903, in the Circuit Court for Talbot County for selling and giving away spirituous and fermented and intoxicating liquors to one William Ewing, and on the same day in the same Court he was indicted for a similar offense committed in selling and giving away such liquors to another person. In each of these cases there was a demurrer to the indictment. These demurrers were overruled and in each case there was a plea of not guilty, tried before a jury and a verdict of guilty and judgment thereon of fine and imprisonment. In each case there was an appeal and a writ of error, but the latter were dismissed at the hearing in this Court. The two appeals, therefore, remain, but they present the same questions, viz.,

the constitutionality of the Acts under which the traverser was indicted and secondly as to the form of the indictment.

This case was most elaborately argued, but we think the general principles involved are well settled.

It appears that the two Acts were passed at the session of 1902, one of them being ch. 84 and the other ch. 265 containing the same provisions, both prohibiting the selling and giving away of spirituous or intoxicating liquors in Chapel District of Talbot County. There is a difference, however, in the titles of the two Acts. The title of the former may, perhaps, be properly criticised, but be this as it may, no objection has been made to the validity of the latter, ch. 265, on the ground that its title does not sufficiently disclose its subject-matter, nor is it objected to for any other reason relating to the imperfection of the title. We may; therefore, for the purposes of this case concede that the Act of 1902, ch. 84, is not valid because of the objection to its title based on Art. 3, sec. 29 of the Constitution. But, as we have said the title of ch. 265 of the same session of the Legislature containing the same provisions as those contained in ch. 84 is, or must be conceded to be free from any objection whatever, and hence, unless there is some constitutional objection to the Act itself, the judgment appealed from must stand—unless the indictment is bad in form.

First then as to the constitutional validity of ch. 265, 1902.

The objection as stated by the traverser is that it is "unreasonable, arbitrary aad oppressive; invades the rights of personal liberty and security guaranteed by the Constitution to the people and denies them the privileges and immunities secured to them by the fundamental doctrines of the common law."

This is certainly very strong language as applicable to the facts of the case now before us. The traverser was indicted for, and by the jury convicted of, the violation of the Act under which he was indicted, that is to say, he was convicted of selling and giving away intoxicating drinks. The question, therefore is, does the Constitution of this State or do "the im-

memorial principles of the common law" guarantee to the traverser the right to sell and give away spirituous and intoxicating liquors.

Even the counsel of the traverser concedes the plenary power of the State to abolish and destroy the liquor traffic or to suppress the evils of intoxication at certain places, or at certain times or to certain classes of persons. But his contention is that the Act is void because it does not contain explicit provisos excepting the *giving* of liquor by private citizens to the members of their household or their guests within their own homes. In our opinion no such exception is necessary to make the Act valid. In the first place we do not think that under any circumstances it was intended or that it would be reasonable, to give this Act the extended application which is sought to be given to it here on behalf of the traverser in order to make it invalid, and, secondly, assuming that its terms are so general that it might be construed as suggested, yet if such a construction would, as contended, make the Act invalid, it would be our duty, if possible, to so construe the language as to make the Act valid and effective. This rule of construction is so well settled that it requires no elaboration. *Temmick* v. *Owings,* 70 Md. 251. But there is nothing in either of the records before us to require the discussion or decision of the question just indicated, for *non constat* the traverser was not one of the very class against which the provisions of the Act were aimed, namely, persons who unlawfully sell under the guise of giving away intoxicants. It is conceded the Legislature has the right not only to forbid the sale, but the manufacture of liquor, but such an exercise of the power to prohibit the sale would practically be nugatory unless accompanied by the power to prohibit giving it away, for the reason that it would be impossible in many cases to prove a sale if a gift be allowed.

But, finally, it is contended that the indictments are bad because they fail to negative the exceptions contained in the Act on which they are founded.

By the Act in question codified as secs. 127, 127A and

127B of Art. 21, it is provided by sec. 127 that "it shall not be lawful for any person, house, corporation, company or assotion to sell or give away in Chapel District of Talbot County any spirituous or fermented liquor, &c. Sec. 127A provides that any person who sells contrary to the provisions of sec. 127 shall, on conviction, be fined and imprisoned as therein provided; and, finally, by sec. 127B it is enacted that nothing contained in this Act shall be construed to prevent the compounding and sale of such liquors for medicinal purposes by a regular pharmacist or druggists having a license for such business. Here then we have a case coming directly within the settled rule in this State so often announced by this Court, "that where, after general words of prohibition, an exception is created in a subsequent clause or section, it must be interposed by the accused as a matter of defence," and it is not necessary therefore, that the indictment should on its face have negatived that the traverser was a regular pharmacist or druggist, having a license for such business, &c., &c. In the secs. 127 and 127A of the Act we have the general words of prohibition making it unlawful for any person, corporation, &c., to sell or give away, and in the subsequent sec. 127B an exception is created in favor of pharmacists and druggists. Numerous cases from other States and the Supreme Court of the United States were cited by counsel, but we find ample authority among the decisions of this Court to sustain our conclusion. *Kiefer* v. *State*, 87 Md. 568, and cases there cited.

There was considerable discussion in the argument of this case in regard to the legitimate exercise of the police power, the invasion of the private rights of the citizen and the violation of the privileges and immunities secured to him under the Constitution and the fundamental doctrines of the common law, but we think what we have said disposes of the questions involved in these appeals, and this being so, we refrain from a discussion of the constitutional questions which were so earnestly argued.

*Judgment affirmed in both appeals, with costs.*

(Decided March 22nd, 1904.)