## BRUCE WILDEN HUGHES v. STATE OF MARYLAND

[No. 445, September Term, 1971.]

*Decided February 16, 1972.*

---

498

The cause was argued before ORTH, MOYLAN and POWERS, JJ.

*Beverly S. Pearson* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Stephen R. Creyke, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

BRUCE WILDEN HUGHES does not claim that the evidence adduced at his trial before a jury in the Circuit Court for Montgomery County was not sufficient to sustain his convictions of committing a certain unnatural and perverted sexual practice on each of 17 January and 24 January 1971 with Frank Edward Dunklee, Jr., a male child under the age of eighteen years.[1] But he asserts that the convictions must be set aside because the statute proscribing his conduct is unconstitutional, and he claims that in any event the trial court committed prejudicial error in the admission of certain evidence.

---

1. The transcript of the proceedings in the record before us does not include the sentence imposed. According to the docket entries it was a general sentence that Hughes "be delivered to the Commissioner of Corrections for a period of two (2) years; Execution of Sentence suspended and defendant placed on Probation for that period of time with special term as stated by the Court." In his brief Hughes says he "was placed on supervised probation for two years on the condition that he continue a course of psychiatric counselling for two years or until his doctor certifies that therapy is no longer necessary; and that he maintain an acceptable code of conduct toward the general public."

I

Code, Art. 27, § 554 provides:

"Every person who shall be convicted of taking into his or her mouth the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth of. any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in jail or in the house of correction or in the penitentiary for a period not exceeding ten years, or shall be both fined and imprisoned within the limits above prescribed in the discretion of the court." [2]

The constitutionality of the statute has been upheld heretofore. In *Blake v. State,* 210 Md. 459 the Court of Appeals saw no merit in the contention that the statute was unconstitutional because it was vague and uncertain and failed to fix an ascertainable standard of guilt.[3] It observed, at 462, that "similar statutes in other states have been universally sustained", citing cases. Hughes

---

2. The indictment charged the offense in the form authorized by the second paragraph of § 554 which reads:

"And in any indictment for the commission of any of the acts, hereby declared to be offenses, it shall not be necessary to set forth the particular unnatural or perverted sexual practice with the commission of which the defendant may be charged, nor to set forth the particular manner in which said unnatural or perverted sexual practice was committed, but it shall be sufficient if the indictment set forth that the defendant committed a certain unnatural and perverted sexual practice with a person or animal, as the case may be."

3. In so ruling the Court rejected the contention that because the statute begins with a prohibition against "oral" perversion, the words "any other unnatural or perverted sexual practice" must be restricted accordingly under the rule of *ejusdem generis.* It found in the language employed a clear legislative intention to cover the whole field of unnatural and perverted sexual practices and thought it unnecessary to describe in detail practices which are matters of common knowledge. 210 Md. at 462.

bases his attack on more sophisticated grounds. He urges that the statute is unconstitutional (1) "for overbreadth in that it punishes every person convicted of acts of sexual perversion without regard to right of privacy of a) consenting married adults and b) consenting unmarried adults concerning their sexual acts," and (2) "because the means of enforcement, which allow a penal term for up to ten years, are inappropriate to effectuate the purpose of the legislation."

## (1)

The constitutional issue was raised below by a motion to dismiss which was denied upon hearing. Our first inquiry is whether Hughes had standing to raise the contention. The general rule is that a litigant may only assert his own constitutional rights or immunities. *McGowan v. State of Maryland,* 366 U. S. 420, 429, citing *United States v. Raines,* 362 U. S. 17. We said in *Lashley v. State,* 10 Md. App. 136, 143: "Ordinarily, a person has no standing in court to vindicate the constitutional rights of others." We pointed out that in *State v. Cherry,* 224 Md. 144, 155, the Court of Appeals noted that while, as a general rule in criminal prosecutions, the accused has the right to assert the invalidity of the law under which he is being prosecuted, he must show that his rights are adversely affected by the statute and more particularly that his rights are thus affected by the particular feature of the statute alleged to be in conflict with the constitution, it not being sufficient that the statute may impair the rights of others. We observed that *Brown v. State,* 177 Md. 321; *Crouse v. State,* 130 Md. 364, and *Parker v. State,* 99 Md. 189 were to like effect. See *Jenkins v. McKeithen,* 395 U. S. 411; *Flast v. Cohen,* 392 U. S. 83; *Baker v. Carr,* 369 U. S. 186. The basis of Hughes' argument is that because the statute is unconstitutional as it applies to consenting adults, married or unmarried, it is unconstitutional on its face and may not be applied to him. But he was not charged as a consent-

ing adult with indulging in the proscribed conduct with another consenting adult. Rather the charge was that he committed an unnatural and perverted sexual practice with a minor. He recognizes that "the legislature may pass laws in the field of regulation of sexual perversion and regulation of obscenity" and he concedes that "the act for which [he] was convicted *might* under a properly drawn statute be made subject to criminal sanctions." We do not agree that in the circumstances he has standing to challenge the constitutionality of the statute upon its face; he has not shown that his rights were adversely affected by the feature of the statute which he alleges to be in conflict with the constitution. That it may impair the rights of others does not bestow upon him standing to challenge it. The possibility of a law's unconstitutional invocation against some defendants in no way affects its constitutionality when it is invoked against a clearly punishable person.

Hughes protests that the general rule is here not apposite. He points out that the statute is not severable, with a constitutional part applicable to one person and an unconstitutional part applicable to another person as was the case, he alleges, in *Lashley* in which Code, Art. 27, § 3 was involved. He says that the statute here applies to "every person" who commits the proscribed acts and since it is unconstitutional as to some persons who commit such acts it must be held to be unconstitutional as to "every person" who commits them. We do not see it that way. We are aware that the Court of Appeals in *State v. Cherry, supra,* at 155, quoted with approval 16 C.J.S., *Constitutional Law* ¶ 84: "An accused affected by one portion [of a statute] may not plead the invalidity of another portion of the same statute not applicable to his case, where the invalidity of the portion questioned will not render void the entire act or at least some provision that does not affect him adversely; * * *." But it was early established that it is the duty of an appellate court to so construe the language of a statute as to make it valid and effective. *Parker v. State,*

99 Md. 189 concerned an Act prohibiting the selling and giving away of intoxicating liquors. It was claimed that the Act was void because it did not contain explicit provisos excepting the giving of liquor by private citizens to the members of their household or their guests within their own homes. The Court said, at 200, "[A]ssuming that its terms are so general that it might be construed as suggested, yet if such a construction would, as contended, make the Act invalid, it would be our duty, if possible, to so construe the language as to make the Act valid and effective. This rule of construction is so well settled that it requires no elaboration." So, even if it were "the Supreme Law of the State" through decisions of the Supreme Court of the United States [4] that it was unconstitutional to prohibit consenting adults from committing the acts designated by § 554, the statute could be construed so as to exempt consenting adults, "for it is not to be presumed that the Legislature intended to do an unconstitutional and void thing; and any construction that would lead to such a conclusion ought to be avoided if possible." *Temmick v. Owings,* 70 Md. 246, 251. We did this in *State v. Siegel,* 13 Md. App. 444. See *Kirstel v. State,* 13 Md. App. 482; *Anderson v. State,* 12 Md. App. 186.

Nothing we have said in determining that Hughes had no standing to contest the constitutionality of the statute is to be construed as implying that we believe that the statute is unconstitutional as to adults, married or unmarried, consenting to the acts proscribed. We shall decide that question when it is properly presented to us. We observe, however, that although it is conceivable that a husband and wife could be convicted under § 554 even though the evidence established that the act was committed with the consent of both parties [5], we think

---

4. Art. 2, Declaration of Rights, Constitution of Maryland. See *Wilson v. Turpin,* 5 Gill 56; *Howell v. State,* 3 Gill 14.

5. In *obiter dictum* in *State v. Nelson,* 271 N. W. 114 (Minn. 1937) the court said of a comparable statute: "It is not the normal sex act this statute aims at. Rather and only it is the unnatural and prohibited ways of satisfying sexual desires that the statute

it unlikely. We are not aware of a case in this jurisdiction where a husband or wife was convicted of the offense.[6] If the acts were in private there would be no witnesses, and if consensual the parties would be equally guilty. Their testimony as witnesses would then require corroboration. *Early v. State,* 13 Md. App. 182. And of course, neither the husband nor the wife would be a compellable witness against the other. Code, Art. 35, § 4. Mr. Justice Douglas, speaking for the Court in *Griswold v. State of Connecticut,* 381 U. S. 479, said, at 486:

> "We deal with a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions."

We share the sentiments of the court in *Pruett v. State,* 463 S.W.2d 191, 195 (Texas 1970) that to extend the protection of this right of privacy of the marital union to strike down a statute proscribing cunnilingus, fellatio, and the whole field of other unnatural or perverted sexual practice, when successful prosecution of private consensual sexual acts between married couples are at most only "conceivable", is not consistent with the description

---

is designed to punish. Thus husband and wife, if violating this statute, could undoubtedly be punished whereas the normal sexual act would not only be legal but perhaps entirely proper." At 118. See also *State v. Schmit,* 139 N. W. 2d 800, 809 (Minn. 1966).

6. Nor does there appear to be an appellate decision holding that lesbian activity is within the ambit of § 554, although the statute refers to "his or her mouth" and "his or her sexual organ". Females are frequently charged with soliciting perverted acts under Code, Art. 27, § 15 (e). See *The Sex Offender Provisions of the Proposed New Maryland Criminal Code: Should Private, Consenting Adult Homosexual Behavior Be Excluded,* 30 Maryland Law Review 91, 94.

of the marriage relationship and right of privacy described by Mr. Justice Douglas.[7]

Hughes claims that § 554 is "unconstitutionally vague in that it fails to establish any age below which consent shall not be a bar to prosecution." He arrives at this conclusion by extending the holding in *Griswold*. On the premise that the import of *Griswold* is that private, consensual, marital relations are protected from regulation by the State through the use of a criminal penalty, he asserts that under the doctrine of equal protection of the laws it is beyond the power of the State to so regulate private, consensual sexual conduct of unmarried adults, *Griswold* not foreclosing the right of privacy of such persons. He then encompasses minors, unmarried and married, within the rule, referring to Code, Art. 43, § 135 as authority that the Legislature has recognized that minors have rights of privacy regarding matters of sexual conduct. Thus as unmarried adults may consent and certain minors may consent, any regulation of their conduct by criminal penalty must establish an age below which consent by the minor may not be effective. Even accepting the initial premise that *Griswold* protects private consensual marital relations, we are unable to accept the extensions of the rule suggested. While *Griswold* may not expressly foreclose the application of its rule to unmarried adults, its rationale clearly does not lend itself to either a heterosexual or homosexual relationship between unmarried persons. The rationale of the *Gris-*

---

7. Mr. Justice Goldberg, concurring in *Griswold*, and joined by the Chief Justice and Mr. Justice Brennan, said at 498-499 that the Court's holding "in no way interferes with a State's proper regulation of sexual promiscuity or misconduct." And Mr. Justice White, concurring in the judgment, recognized that "* * * to serve the State's policy against all forms of promiscuous or illicit sexual relationships, be they premarital or extramarital, [is] concededly a permissible and legitimate legislative goal." At 505. Maryland considers adultery an illicit sexual relationship and has made it a crime punishable by a fine of $10. Art. 27, § 4. It has been held that when the Act was passed the legislature intended "adultery" to carry its common law meaning, the test being whether the woman was married. *Evans v. Murff*, 135 F. Supp. 907, (D. Md. 1955). Cf. *Cole v. State*, 126 Md. 240.

*wold* holding flows from its eulogy of the marital status and lacking such status the rule has no foundation. In such circumstances we see no invidious discrimination between married individuals and unmarried individuals so as to deny equal protection of the laws in any event. See *Rapheal v. Hogan,* 305 F. Supp. 749 (U.S.D.C.S.D. New York 1969) ; *State of Washington v. Rhinehart,* 424 P. 2d 906 (Washington 1967). The further extension to encompass minors within the *Griswold* ruling is also suspect. Code, Art. 43, § 135, under the general heading "Health", provides that a minor shall have the same capacity as an adult to consent to medical treatment if one or more designated conditions apply. One of such conditions is that the minor had attained the age of 18 years. Subsection (a) (1). Another is that the minor "seeks treatment or advice concerning venereal disease, pregnancy or contraception not amounting to sterilization." Subsection (a) (3). It is in the discretion of the treating physician whether or not to inform the spouse, parent, custodian or guardian as to the treatment given or needed. Subsection (c).[8] But the statute indicates no legislative intent that a minor may consent to perverted sexual practice. We see no constitutional prohibition in a legislative prescription that it be a public offense for an adult to engage in perverted sexual practice with a minor even with the minor's consent. We do not deem such activity to be constitutionally protected. Even if the 9th Amendment be considered as entitling consenting adults to engage in private perverted sexual practice, it does not necessarily follow that it entitles an adult, as a constitutional right, to so engage with a minor. Nor do we feel that the 9th Amendment precludes the Legislature from declaring illicit such a sexual relationship regardless of the age of the minor. If the Legislature feels it to be in the public interest to establish an age of consent for perverted sexual practice, as it has in

---

8. Art. 43, § 135 as amended by ch. 758, Acts 1971, effective 1 July 1971.

carnal knowledge of a female, it, of course, may do so.[9] But that § 554 does not "establish any age below which consent shall not be a bar to prosecution" does not make the statute unconstitutionally vague.

All presumptions favor the constitutionality of a duly enacted statute and it will not be declared unconstitutional unless it plainly contravenes the federal or state constitutions. *Mason v. State,* 12 Md. App. 655; *Woodell v. State,* 2 Md. App. 433. We are not persuaded that Code, Art. 27, § 554 must be declared unconstitutional because it does not specify an age at which a minor may consent to engage in perverted sexual practice with an adult.[10]

## (2)

Hughes contends that Code, Art. 27, § 554 is unconstitutional "because the means of enforcement, which allow a penal term for up to ten years, are inappropriate to effectuate the purpose of the legislation." In support of this point below Hughes offered the testimony of Frank Broschart at the hearing on the motion to dismiss the indictment. At the time of the hearing Broschart was chairman of the Department of History at Bishop McNamara High School in Forestville, Maryland. He said he had a "two-dimensional" opportunity to observe conditions inside Maryland penal institutions. One op-

---

9. We note that for a person to carnally know a female under the age of 14 years is a felony, Code, Art. 27, § 462; for a person except male persons under the age of 18 years to carnally know a female, not his wife, between the ages of 14 and 16 is a misdemeanor, id., § 464. A child who has reached his 18th birthday may be prosecuted for a crime as an adult. Code, Art. 26, § 70-1 (c) and § 70-2 (a) (1). See § 70-2 (d); *Greene v. State,* 11 Md. App. 106.

A draft of a proposed sex offender code by the Maryland Commission on Criminal Law prohibits consensual homosexual activity between an adult and a minor four years younger than the actor. It does not prohibit such activity between two consenting adults in private or between "a person who has recently passed into adulthood and a minor near to him in age under conditions of consent and privacy." 30 Maryland Law Review, 91, 109. See also *Model Penal Code,* § 213.2 (1) (d) where the age of consent is 10 years.

10. Frank Edward Dunklee, Jr. was 13 years of age at the time the offense was committed.

portunity was as an inmate in the Maryland Penitentiary in 1968—"I was serving a sentence for bad checks." The other was as a full-time teacher at the Maryland Correctional Institution and the Maryland Correctional Training Center in Hagerstown in 1969. Both as an inmate and a teacher he observed the daily life of prisoners. The substance of his testimony was as summarized in Hughes' brief:

> "[H]e had personally witnessed at least ten instances of sodomy * * * and that he had observed a number of other homosexual acts, such as kissing and romantic conversations between males; that prison guards were unable to control these practices * * *; that prisoners convicted on sex charges were grouped together where their opportunities for continued homosexual relationships were intensified * * *. The witness also testified that in the Maryland penal system a prisoner who had been convicted for homosexuality would be approached either in an aggressive manner or by seduction to submit to sexual activities by other inmates, * * * and that if a prisoner refused to participate he would be in danger of being knifed or hurt * * *." (Transcript references omitted)

He argues on the basis of Broschart's testimony that not only is there "in fact no connection between the purpose sought to be accomplished under Art. 27, § 554, and of punishment by a penitentiary sentence, but that such punishment forces the person convicted to engage more intensively in homosexual practices." He concludes that therefor the imprisonment provisions of the statute must be stricken and his sentence vacated.

The imprisonment provisions of the statute are not unconstitutional on their face. The Legislature is not constitutionally precluded from authorizing the imprisonment of a person convicted of committing an act which it has declared to be a crime. The constitutional prohibi-

tions are against the infliction of "cruel and unusual punishments." Amendment VIII, to the Constitution of the United States; Art. 25 of the Declaration of Rights, Constitution of Maryland. Imprisonment for years or life has been held not to be cruel and unusual. *Martin v. State,* 227 Md. 407, 410.

## II

Hughes contends that the trial court erred in admitting into evidence a book seized from his apartment under the authority of a search warrant. The book was entitled "Guidebook to Sexual Positions Between Consenting Adult Males," by J. J. Proferes. A blurb on the cover proclaimed it to be "the first authentic guidebook, complete with illustrations on sexual positions for every male-male relationship!" The introduction began:

> "The fact that hundreds of 'how-to' books have been written on sex in general and sexual positions in particular, is not news to anyone familiar with the subject. But, how about the consenting adult males who wish to indulge in sex play of their own? Why shouldn't they be guided and instructed in proper foreplay, positioning and all the other essentials in making for a satisfactory orgasm?"

Patently finding no reason why they should not, the subjects mentioned are depicted by photographs and explanatory text in vivid detail.

Hughes filed a pretrial motion to suppress which was denied upon hearing. Rule 729. On appeal the grounds for the claim that the lower court erred in admitting the book involve (1) the warrant as (a) a general warrant, and (b) improperly issued; and (2) the identification of the book at the trial.

### (1)
### (a)

Hughes alleges that "the warrant did not list or specify

the particular item to be seized, but authorized a general rummage through all of the materials in [his] apartment."

Amendment IV to the Constitution of the United States, in furtherance of the expressed right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, provides that "* * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Amendment IV flows to the states through Amendment XIV. *Stanford v. Texas*, 379 U. S. 476; *Mapp v. Ohio*, 367 U. S. 643. The Maryland equivalent to Amendment IV is Art. 26, Declaration of Rights to the Constitution of Maryland. And we have a statute, Code, Art. 27, § 551, dealing with search warrants.[11] We have stated that the statute is in full compliance with the constitutional provisions and we have found it clear from the provisions of the statute that what it, in effect, authorizes is a search of persons, places or things, as reasonably particularized in the warrant, for specifically designated property, unlawfully obtained or held, or of evidence of the commission of the crime, including items relating thereto which are purely evidentiary in nature. *Salmon v. State*, 2 Md. App. 513, 519. The items which the police may reasonably seize under a constitutionally valid warrant and search are not confined to those specifically designated in the warrant if a nexus exists between the item seized and criminal be-

11. Article 26 prohibits general search warrants but does not contain an express requirement that a warrant particularly describe the things to be seized. It provides: "* * * and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted." Nor does the implementing statute, Code, Art. 27, § 551, require by express terms particularity of description of the things to be seized, as it does of "the individual, building, apartment, premise, place or things to be searched * * *." It provides that the warrant may authorize the seizure of "* * * any property found liable to seizure under the criminal laws of this State, * * *." But Art. 26 has been held to be in *pari materia* with Amendment IV. *Givner v. State*, 210 Md. 484. See *Frank v. Maryland*, 359 U. S. 360.

havior. Such nexus is automatically provided in the case of fruits and instrumentalities of crime and contraband, but may exist also as to mere evidence. *Warden v. Hayden,* 387 U. S. 294; *Gerstein v. State,* 10 Md. App. 322, 332; *Crawford v. State,* 9 Md. App. 624, 627; *Anglin v. State,* 1 Md. App. 85, 88-90.

The affidavit here included information that in his apartment Hughes had exhibited to Dunklee "photographs and books with pictures of nude men performing sodomy and unnatural and perverted sex acts, immediately after which Hughes performed an act of oral sodomy on Dunklee." Things directed to be seized were described as "obscene matter, namely loose photographs and books of pictures showing nude males engaging in sodomy and unnatural and perverted sex practices." As described we find that the property to be seized was sufficiently specifically designated. We do not think that the warrant authorized "a general rummage through all of the materials" in Hughes' apartment. We hold that the warrant was not a general one.

### (b)

Hughes claims that the procedure whereby the search warrant was issued was defective in that he was not afforded an adversary hearing on the issue of obscenity prior to the issuance of the warrant. The cases he relies on do require such an adversary hearing, but they were decided in the frame of reference of criminal prosecutions for violation of obscenity laws, as in *United States v. Brown,* 274 F. Supp. 561 (U.S.D.C.S.D. N.Y. 1967), or civil forfeitures, as in *A Quantity of Copies of Books v. Kansas,* 378 U. S. 205 or suits to enjoin the interference with exhibition of allegedly obscene materials as in *Adler v. Pomerleau,* 313 F. Supp. 277 (U.S.D.C.D. Md. 1970). The purpose of such a hearing is to safeguard against governmental suppression of nonobscene expression. *Adler* at 285.[12]

---

12. The court found in *Adler* that no such hearing was required prior to arrest. "We are convinced that the requirement of an ad-

In the instant case no suppression of allegedly obscene material is involved because Hughes was not prosecuted for violation of the obscenity laws.[13] The suppression of expression in violation of the First Amendment was not an issue in his trial. He was not prosecuted for any of the acts relating to obscene matter proscribed by statute. See Code, Art. 27, §§ 417-425. The requirement of an adversary hearing on a question of obscenity is in nowise here applicable. Whether or not the book offered in evidence was obscene in constitutional contemplation played no part in its seizure or admission in evidence in the context of the case before us. That property may be obscene does not *per se* preclude a reasonable search for it or a reasonable seizure of it with regard to a criminal cause in which the issue is not the obscenity *vel non* of the property. It may be that allegedly obscene materials are not to be treated the same way as narcotics, gambling paraphernalia and other contraband, *Metzger v. Pearcy,* 393 F. 2d 202 (7th Cir. 1968), but such rule is not applicable when obscenity is not the issue. The holding in *Stanley v. Georgia,* 394 U. S. 557, protects an accused only when the crime is mere private possession of ob-

---

versary hearing prior to seizure, in combination with the traditional safeguards inherent in a criminal prosecution, will adequately protect the plaintiff's first amendment rights." At 286. The related criminal prosecution was for violation of obscenity statutes.

13. The trial before us was under indictment 11978. It contained seven counts. The first three concerned perverted practice, assault and battery and assault on Dunklee on 17 January 1971. The next three charged the same offenses as occurring on 24 January 1971. The seventh count charged Hughes with exhibiting certain obscene matter to Dunklee on 17 January 1971. Art. 27, § 419. According to the docket entries a nolle prosequi was entered as to it before the jury was sworn. At the close of the evidence offered by the State, a nolle prosequi was entered as to counts 2, 3, 5 and 6. Counts 1 and 4 went to the jury.

Indictment 11979 was also returned against Hughes. The State moved to consolidate the indictments for trial but the motion was denied. The record before us does not disclose the offenses charged thereby. However, in opposition to the motion to consolidate Hughes stated that the acts charged in the two indictments were alleged to have taken place with different persons at different times and on different days and claimed that evidence presented "to prove one act will have the same purpose and effect of corroborating evidence presented to prove the other act."

scene material.[14] The short of it is that Code, Art. 27, § 551 governing the issuance of the search and seizure warrant was not constitutionally limited in the circumstances of the case under consideration, no First Amendment right of Hughes being involved. We hold that the procedure whereby the search warrant was issued was not defective.

In so holding we are aware that in the application for the search and seizure warrant it was stated that there was reason for the affiant to believe that the property to be seized was in violation of Code, Art. 27, § 419 [under title "Obscene Matter", subtitle "Distribution, etc., to minor under eighteen"] and § 554 [under title "Search Warrants", subtitle "Issuance, contents * * *", etc.] and that in the affidavit the affiant said it was his belief "that obscene matter is being kept on the aforementioned premises for the purpose of exhibiting to minor children under eighteen years of age and for use as an instrumentality of the crime of unnatural and perverted sex act * * *." It may be that in a prosecution for the offense proscribed by § 419, an adversary hearing would have been necessary to the admission of the evidence seized. But the prosecution here was not thereunder and no such hearing, as we have ruled, was constitutionally required for the crime in fact prosecuted. In the circumstances we treat the reference to § 419 as surplusage not rendering the issuance of the warrant defective.

### (2)

Hughes would have us apply the principles of *United States v. Wade*, 388 U. S. 218 as construed in *Smith and Samuels v. State*, 6 Md. App. 59, to the admission of tangible evidence. We see nothing in those cases to compel such application and we are not persuaded that it would be in the interest of justice to do so. At the trial Dunklee was shown the challenged evidence by the State and asked

---

14. "We hold that the First and Fourteenth Amendments prohibit making mere possession of obscene material a crime." 394 U. S. at 568.

if he had ever seen it before. His testimony clearly established that on 17 January 1971 while in Hughes' apartment Hughes had requested him to get a book from Hughes' car. Dunklee made a positive in-court identification of the evidence shown him—"That is the book he sent me out into his car to get that day." He said it was "in substantially the same kind of condition it was the day" he saw it. Hughes' point is that the book should not have been admitted if Dunklee had seen it while it was in the hands of the police "because we have no way of telling whether or not he is identifying this book from his having seen it in custody or whether he is identifying from having seen it in this apartment." Defense counsel requested a hearing out of the jury's presence to determine the question. What Hughes is suggesting is a line-up of tangible evidence at which the accused must have the assistance of counsel unless effectively waived. We do not think that such a procedure is constitutionally required. We hold there was no abuse of judicial discretion in the admission of the book in evidence. *Carroll v. State,* 11 Md. App. 412.[15]

*Judgments affirmed.*

---

15. We observe that as to the question of the connection between the accused and the evidence, probability is the only requirement, and if there is any doubt it goes to the weight and not to the admissibility. *Brown v. State,* 10 Md. App. 462. Thus tangible evidence need not be positively connected with the accused or the crime committed in order to render it admissible. *Hebb v. State,* 10 Md. App. 145.

We note that from our examination of the challenged evidence it would seem to have readily apparent characteristics with respect to size, color and content.