# HOWARD CHESTER KELLY, JR. *v.* STATE OF MARYLAND

[No. 655, September Term, 1979.]

*Decided April 10, 1980.*

The cause was argued before THOMPSON, COUCH and MACDANIEL, JJ.

*Timothy E. Meredith* and *Barbara Mello,* with whom were *Robert W. Warfield* and *Corbin, Heller & Warfield, Chartered* on the brief, for appellant.

*William H. Kenety, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Warren Duckett, State's Attorney for Anne Arundel County,* and *Ronald Naditch, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Appellant's major contention on appeal is that his conviction under *Md. Code,* Art. 27, § 554 for unnatural or

perverted sexual practices is an unconstitutional infringement of his right to privacy.[1] He also argues he was denied equal protection, and subjected to cruel and unusual punishment.[2]

The prosecutrix testified at the time of the trial that she was abducted at knifepoint on the parking lot of Harundale Mall in Anne Arundel County, Maryland on the afternoon of May 5, 1978, by two young men, appellant Howard Chester Kelly, Jr., and his friend, Ronald Holden. It was her testimony that she was driven, against her will, to a secluded area, an abandoned missile site in Anne Arundel County, where she was assaulted, raped and forced to engage in fellatio. According to the prosecutrix, at the conclusion of the sexual encounter the defendant abandoned her at the missile site. She wandered to a nearby house saying she was "dumped"; the lady of the house called the police. Later the same afternoon the appellant was arrested.

At the time of trial, the appellant and his friend each took the stand and testified, admitting that Holden had had sexual intercourse with the prosecutrix and that she had performed fellatio on each of them a number of times. They testified that the entire episode was at the prosecutrix's urging and initiative. According to the defendants, they and the prosecutrix had spent time together that afternoon in a pool hall at Jumpers Mall. It was at the suggestion of the prosecutrix, who claimed that she used to live in the area, that they drove to the abandoned missile site. They testified

---

1. Art. 27, § 554 in pertinent part reads as follows:

"§ 554. *Unnatural or perverted sexual practices.*

"Every person who is convicted of taking into his or her mouth the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth of any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in jail or in the house of correction or in the penitentiary for a period not exceeding ten years, or shall be both fined and imprisoned within the limits above prescribed in the discretion of the court.

2. Appellant claims both the Constitution of the United States and the Constitution of Maryland were violated; his arguments, however, are based on alleged violations of the federal constitution. We will so limit our opinion.

that after arriving at the missile site, the prosecutrix was an eager and willing participant in all sexual activities that took place, and that all that had occurred was with her consent.

The jury found appellant not guilty on all counts of the indictment in which force or threat of force was an element, but found him guilty under count six, "Perverted Sexual Practices." The constitutional questions raised here were properly preserved in appropriate objections to the instructions, as well as otherwise. Judge Raymond G. Thieme, Jr., sitting in the Circuit Court for Anne Arundel County, imposed a sentence of one year which was suspended. A three year period of probation was imposed.

The Supreme Court has recognized that the right of privacy may be constitutionally protected in *e.g., Griswold v. Connecticut,* 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972); *Roe v. Wade,* 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973); *Carey v. Population Services International,* 431 U.S. 678, 97 S. Ct. 2010, 52 L. Ed. 2d 675 (1977). The issue in the present case is whether the right of privacy applies to the type of conduct prohibited by § 554. In *Carey v. Population Services, supra,* the Supreme Court, in its most recent case interpreting the right to privacy, stated that the Court had not answered the question to what extent the Constitution prohibits the state from regulating private consensual sexual behavior among adults. 431 U.S. at 688, n. 5, 97 S. Ct. at 2018. Thus far, the right to privacy has been held by the Court to apply to the marital relationship; *Griswold, supra,* the right of individuals to decide whether to bear children; *Eisenstadt v. Baird, supra,* and the decision whether to terminate pregnancy; *Roe v. Wade, supra.* For a summary of other cases where the Court said that privacy applies, *see, Carey, supra,* 431 U.S. at 685, 97 S. Ct. at 2016.

In *Doe v. Commonwealth's Attorney for City of Richmond,* 403 F. Supp. 1199 (E.D. Va. 1975), *aff'd. mem.,* 425 U.S. 901, 96 S. Ct. 1489, 47 L. Ed. 2d 751 (1976), petitioners challenged the constitutionality of a Virginia sodomy

statute as applied to adult male consensual conduct. In analyzing whether the Constitution prohibited such a statute, the District Court concluded that since sodomy "is obviously no portion of marriage, home or family life," the state could appropriately punish sodomy in the promotion of morality and decency. 403 F. Supp. at 1202. The Supreme Court affirmed this decision in a Memorandum Opinion. Insofar as a Memorandum Opinion is authority, it appears from our brief analysis of recent Supreme Court decisions that the right of privacy does not protect the perverted sex practice of which appellant was convicted in the present case. The rule that the right to privacy does not invalidate statutes prohibiting consensual sexual practices is supported by most other courts that have considered the question.[3]

---

3. *See,* Doe v. Commonwealth, *supra,* State v. Bateman, 113 Ariz. 107, 547 P.2d 6, *cert. denied,* 429 U.S. 864 (1976); Carter v. State, 255 Ark. 225, 500 S.W.2d 368 (1973), *cert. denied,* 416 U.S. 905 (1974); Dixon v. State, 256 Ind. 266, 268 N.E.2d 84 (1971); Hughes v. State, 14 Md. App. 497, 287 A.2d 299, *cert. denied,* 409 U.S. 1025, 93 S. Ct. 469, 34 L. Ed. 2d 317 (1972); State v. Elliott, 89 N.M. 305, 551 P.2d 1352 (1976); Washington v. Rodriguez, 82 N.M. 428, 483 P.2d 309 (1971); People v. Mehr, 87 Misc. 2d 257, 383 N.Y.S.2d 798 (1976); and People v. Rice, 87 Misc. 2d 257, 383 N.Y.S.2d 799 (1976), *aff'd.* 41 N.Y.2d 1018, 363 N.E.2d 1371, 395 N.Y.S.2d 626 (1977); State v. Poe, 40 N.C. App. 385, 252 S.E.2d 843 (1979); Canfield v. State, 506 P.2d 987 (Okla. Crim. App. 1973), *appeal dismissed,* 414 U.S. 991, 94 S. Ct. 342 (1973), *reh. denied,* 414 U.S. 1138, 94 S. Ct. 884 (1974); Pruett v. State, 463 S.W.2d 191 (Tex. Crim. App. 1970), *appeal dismissed,* 402 U.S. 902, 91 S. Ct. 1379, *reh. denied,* 403 U.S. 912, 91 S. Ct. 2203 (1971); State v. Rhinehart, 70 Wash. 2d 649, 424 P.2d 906, *cert. denied,* 389 U.S. 832 (1967).

*But see,* Cotner v. Henry, 394 F.2d 873 (7th Cir.), *cert. denied,* 393 U.S. 847 (1968); Buchanan v. Batchelor, 308 F. Supp. 729 (N.D. Tex. 1970), *vacated on other grounds* 401 U.S. 989, 91 S. Ct. 1221, 28 L. Ed. 2d 526 (1971); State v. Pilcher, Io., 242 N.W.2d 348 (1976); Commonwealth v. Balthazar, 366 Mass. 298, 318 N.E.2d 478 (1974); People v. Howell, 396 Mich. 16, 238 N.W.2d 148 (1976); State v. Ciuffini, 164 N.J. Super. 145, 395 A.2d 904 (1978); New York v. Onofre, 48 U.S.L.W. 2520 (Feb. 12, 1980) (N.Y. Sup. Ct., App. Div. 4th Dept.).

*See also,* Lovisi v. Slayton, 539 F.2d 349 (4th Cir.), *cert. denied,* 429 U.S. 977 (1976); State v. Saunders, 75 N.J. 200, 381 A.2d 333 (1977); People v. Jose L., 99 Misc. 2d 922, 417 N.Y. Supp. 2d 655 (1979); Tribe, *American Constitutional Law,* § 15-13 (1978); Craven, *Personhood: The Right to Be Let Alone,* 1976 Duke Law J. 699 (1976); Richards, *Unnatural Acts and the Constitutional Right to Privacy: A Moral Theory,* 45 Fordham L. Rev. 1281 (1977); Wilkinson and White, *Constitutional Protection for Personal Lifestyles,* 62 Cornell L. Rev. 563 (1977); *Note on Privacy: Constitutional Protection for Personal Liberty,* 48 N.Y.U.L. Rev. 670 (1973); *Annot.* 58 A.L.R.3d 636 (1974).

The majority rule has received the support of this Court in *dicta.* In *Hughes v. State,* 14 Md. App. 497, 287 A.2d 299, *cert. denied,* 409 U.S. 1025, 93 S. Ct. 469, 34 L. Ed. 2d 317 (1972), this Court found that the accused had no standing to challenge the constitutionality of the perverted sex practices statute as a consenting adult when he had indulged in the practice with a minor. The Court stated:

"Nothing we have said in determining that Hughes had no standing to contest the constitutionality of the statute is to be construed as implying that we believe that the statute is unconstitutional as to adults, married or unmarried, consenting to the acts proscribed. We shall decide that question when it is properly presented to us. We observe, however, that although it is conceivable that a husband and wife could be convicted under § 554 even though the evidence established that the act was committed with the consent of both parties, we think it unlikely. We are not aware of a case in this jurisdiction where a husband or wife was convicted of the offense. If the acts were in private there would be no witnesses, and if consensual the parties would be equally guilty. Their testimony as witnesses would then require corroboration. *Early v. State,* 13 Md. App. 182. And of course, neither the husband nor the wife would be a compellable witness against the other. Code, Art. 35, § 4. Mr. Justice Douglas, speaking for the Court in *Griswold v. State of Connecticut,* 381 U.S. 479, said, at 486:

'We deal with a right of privacy older than the Bill of Rights — older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty,

not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions.'

We share the sentiments of the court in *Pruett v. State,* 463 S.W.2d 191, 195 (Texas 1970) that to extend the protection of this right of privacy of the marital union to strike down a statute proscribing cunnilingus, fellatio, and the whole field of other unnatural or perverted sexual practice, when successful prosecution of private consensual sexual acts between married couples are at most only 'conceivable', is not consistent with the description of the marriage relationship and right of privacy described by Mr. Justice Douglas." 14 Md. App. at 503-05. (footnotes omitted).

We are not persuaded to change the rule and invalidate a legislative prohibition against sodomy, in the absence of a clear lead from the Supreme Court of the United States or from the Court of Appeals of Maryland. We are especially reluctant to invalidate a crime of such ancient vintage. Sodomy was prohibited by Acts of 1793, Chapter 57, Sec. 10. See also Exodus 22:19, Leviticus 18:22-23, and Deuteronomy 23:17.

Appellant argues that inasmuch as fornication is not prohibited by Maryland law, persons indulging in private, consensual acts of sodomy are denied equal protection of the law. The argument is that there is no essential difference between vaginal intercourse and other sex acts. He also argues that any punishment for sodomy is cruel and unusual. Once again we repeat, we will not invalidate laws of such ancient vintage without clear authority from higher courts.

*Judgment affirmed.*
*Appellant to pay the costs.*