PHILLIP DIXON, JR. *v.* STATE OF INDIANA.

[No. 869S177. Filed April 6, 1971. Rehearing denied May 20, 1971.]

*William C. Erbecker, James Manahan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter E. Bravard, Jr.,* Deputy Attorney General, for appellee.

GIVAN, J.—The appellant was charged by indictment in three counts: Count 1. Sodomy; Count 2. Rape; and Count 3. Aggravated Assault. Trial by court without a jury resulted in a finding of guilty as to Count 1. Upon the conviction of sodomy the appellant was sentenced to not less than two nor more than fourteen years in the Indiana State Prison and fined $100. Count 1 of the indictment under which the appellant was convicted reads as follows:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that Phillip Dixon, Jr. on or about the 20th day of June, A. D. 1968, at and in the County of Marion and in the State of Indiana, did then and there unlawfully and feloniously commit an abominable and detestable crime against nature with mankind with one BEVERLY J. LEWIS, a human being, then and there being contrary to the form of the statute in such case

made and provided, and against the peace and dignity of the State of Indiana."

The statute under which the appellant stands convicted reads as follows:

Burns Ind. Stat. (1956 Repl.), § 10-4221:

"Whoever commits the abominable and detestable crime against nature with mankind or beast; or whoever entices, allures, instigates or aids any person under the age of twenty-one [21] years to commit masturbation or self-pollution, shall be deemed guilty of sodomy, and, on conviction, shall be fined not less than one hundred dollars [$100] nor more than one thousand dollars [$1,000], to which may be added imprisonment in the state prison not less than two [2] years nor more than fourteen [14] years. [Acts 1905, ch. 169, § 473, p. 584.]"

The facts tending to support Count 1 of the indictment are as follows:

Appellant and the prosecuting witness met in a tavern in the city of Indianapolis. After spending some time together there, they proceeded to the prosecuting witness' home where after further conversation the prosecuting witness alleged the appellant attacked her, and after an act of sexual intercourse, committed the act of cunnilingus (placing of the mouth against the vulva).

The appellant argues four basic grounds for reversal which, in substance, are:

1. The evidence was insufficient to convict because the act between two consenting adults out of view of the public does not constitute a crime under the statute, and that the conviction would be void under the First and Fourteenth Amendments to the United States Constitution.

2. That the decision of the trial court is contrary to law because it was based on conduct not covered by the statute.

3. The decision of the trial court was void because the statute upon which it is based is void for vagueness under the

Sixth Amendment to the United States Constitution and under Article 1, § 12 of the Constitution of Indiana; and

4. The decision of the trial court is void because the statute upon which it is based is void for lack of a rational basis under the due process clause of the Fourteenth Amendment to the United States Constitution.

All of these questions being interrelated, they will be dealt with simultaneously in this opinion.

Appellant relies heavily upon the case of *Griswold* v. *Connecticut* (1965), 381 U. S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678. In the *Griswold* case the appellant Griswold is an executive director of the Planned Parenthood League of Connecticut. The appellant Buxton is a licensed physician and a professor in the Yale Medical School, who served as medical director for the League. It was the stated purpose of the League to give information, instruction and medical advice to *married persons* as to the means of preventing conception. A Connecticut statute made it a crime for any person to use any drug, medical article or instrument for the purpose of preventing conception. The Supreme Court of the United States ruled that the appellants had the right to raise the constitutional rights of married people with whom they had a professional relationship and decided the case upon the proposition that the appellants as accessories should have the standing to assert that the offense with which they stood charged with assisting was not and could not constitutionally be a crime. The court held the statute as it applied to married couples violated the various guarantees contained in the Bill of Rights against the violation of the right of privacy. In so holding the court stated:

"Would we allow the police to search the sacred precincts of marital bedrooms for telltale signs of the use of contraceptives? The very idea is repulsive to the notions of privacy surrounding the marriage relationship."

Appellant anticipates the distinction between his case and the *Griswold* case in that there was no marriage relationship

involved between appellant and the prosecuting witness; however, he argues that the same principles should be applied, citing various legal and nonlegal authorities making various recommendations that the laws be modified in order that many acts now forbidden by statute might be performed in private between consenting persons. Typical among their many quotations is one taken from Donnelly, Goldstein and Schwartz CRIMINAL LAW where it is stated at page 142:

> [It is recommended that] ". . . the criminal law be amended so as to exclude cosensual acts done in private by adult males."

Appellant also gives an extensive quotation from the celebrated book, SEXUAL BEHAVIOR OF THE HUMAN FEMALE by Kinsey, Pomeroy, Martin, Gebhard from page 257, which observes, in substance, that in some groups as much as 46% of the females interviewed accepted oral contacts with the female genitalia and observes that mouth genital contacts are part of the pre-coital sex play of practically all mammals. Without arguing with the various authorities cited by the appellant, we hold that these arguments are not persuasive in his case. If we would assume for the sake of argument that the prosecuting witness did consent, appellant cites no ruling case nor are we able to find a case where consent of both participants is a defense to the crime charged. In fact the authorities we find hold that consent is not a defense in a sodomy prosecution. 81 C.J.S. Sodomy, § 2, p. 372. We therefore hold that consent is not a defense in a prosecution for sodomy. We are equally unimpressed by the claim via Dr. Kinsey and others that the acts complained of in this case are widespread in acceptance. Though such might be a valid argument to make to the Indiana legislature in an attempt to modify the existing laws, it is hardly an argument upon which this Court can justify a judicial decision.

The Circuit Court of Appeals for the 7th Circuit recently ordered an Indiana resident released from custody of the war-

den of the Indiana State Reformatory on the ground that his incarceration under the Indiana sodomy statute was unconstitutional. In so doing the Circuit Court relied upon *Griswold*, supra, holding that acts committed between consenting husband and wife were immune from prosecution under the statute under the theory of invasion of right of privacy. *Cotner* v. *Henry* (7th Cir. 1968), 394 F. 2d 873. However, as above pointed out, the case at bar does not come within the factual framework of the *Cotner* case.

Appellant maintains that the statute under which he stands convicted is void because it is vague and does not specifically describe the crime of which he stands convicted. Embarking on this premise, appellant attempts to convince this Court that it would be guilty of judicial legislation if it affirms his conviction, yet he ardently argues on the other hand we should judicially legislate that acts between consenting parties cannot constitute sodomy. We would point out that appellant's argument is far from new in this and many other jurisdictions. Courts have universally pointed out that the acts sought to be prevented by this and similar statutes are of such a nature that legislatures and courts are reluctant to engage in detailed descriptions of the many acts which the human being is capable of accomplishing which are so offensive as to be deemed an "abominable and detestable crime against nature with mankind or beast." This terminology has been used for generations in this and other jurisdictions and has been deemed to be understood as encompassing not only the act with which the appellant is charged, but many other acts as well. Confining ourselves to the cases decided under the statute in question in Indiana alone, we find that sodomy has been held, in addition to the acts specifically stated in the statute, to include the following:

Beastiality. Held to be committed when sexual desires are sought to be gratified by the use of a living creature other than man. *Murray* v. *State* (1957), 236 Ind. 688, 143 N. E. 2d 290.

Carnal copulation *per os* or *per anum*. *Glover* v. *State* (1913), 179 Ind. 459, 101 N. E. 629, 45 LRA (N.S.) 473.

Cunnilingus. The charge in the case at bar described above. *Young* v. *State* (1923), 194 Ind. 221, 141 N. E. 309.

The courts have held that the statute which encompasses the above acts is applicable to persons of both sexes, holding that the term "mankind" includes women. *Connell* v. *State* (1939), 215 Ind. 318, 19 N. E. 2d 267.

In each of the above cases the same general objections were raised as are raised by the appellant in this case. The reaction of the Court has been uniform throughout in finding that the language of the statute was adequate to support the charges. The language of the indictment in the case at bar is remarkably similar to the language in *Estes* v. *State* (1964), 244 Ind. 691, 195 N. E. 2d 471, 2 Ind. Dec. 584. In that case, as in previous cases, this Court repeated its stand that the statute and the charge based upon the statute was sufficient to withstand the claim that there was a denial of due process and equal protection as required by the constitutions of Indiana and the United States. If there was any doubt prior to 1923 that the act of which the appellant stands convicted came within the statute that doubt was resolved in *Young* v. *State, supra.* There have been many meetings of the state legislature since that time with many opportunities to amend the statute, if the court's interpretation was thought to be erroneous. At this late date we are constrained to follow the cases which have interpreted the meaning and intent of the statute.

The trial court is, therefore, affirmed.

Arterburn, C.J., and Hunter, J., concur; DeBruler, J., dissents with opinion in which Prentice, J., concurs.

### DISSENTING OPINION

DeBruler, J.—I dissent for two reasons: (1) The statute is unconstitutional due to vagueness; (2) The statute is un-

constitutional to the extent that it attempts to regulate private sexual relations between two consenting adults.

(1) Appellant was convicted in a trial without jury in the Marion County Criminal Court No. 2 for Sodomy in violation of I.C. 1971, 35-1-89-1, being Burns § 10-4221, and sentenced to two to fourteen years in prison. Appellant was charged under the first clause of the statute which reads:

> "Whoever commits the abominable and detestable crime against nature with mankind or beast . . . shall be deemed guilty of sodomy, and, on conviction, shall be fined not less than one hundred dollars nor more than one thousand dollars, to which may be added imprisonment in the state prison not less than two years nor more than fourteen years."

It is a fundamental principle of our system of law in Indiana that a statute attempting to create a public offense must convey an adequate description of the evil intended to be prohibited so that a person of ordinary comprehension subject to the law can know what conduct on his part will render him liable to its penalties. *Stanley* v. *State* (1969), 252 Ind. 37, 245 N. E. 2d 149; *Guetling* v. *State* (1926), 198 Ind. 718, 153 N. E. 765; *Cook* v. *State* (1901), 26 Ind. App. 278, 59 N. E. 489. A statute which does not do this also violates the due process clause of the Fourteenth Amendment to the United States Constitution. *Bouie* v. *Columbia* (1964), 378 U. S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894; *U. S.* v. *Harriss* (1954), 347 U. S. 612, 74 S. Ct. 808, 98 L. Ed. 989; *Lanzetta* v. *New Jersey* (1939), 306 U. S. 451, 59 S. Ct. 618, 83 L. Ed. 888.

The first clause of the sodomy statute which is the only part of the statute involved here, does not meet this test. The crucial words are "abominable and detestable crime against nature with mankind or beast". The words "abominable" and "detestable" are mere epithets and are not descriptive of any behavior at all. The words "with mankind or beast" give us no information unless we know what behavior is being conducted "with mankind or beast". The issue then is whether

a person of ordinary comprehension can know what conduct is prohibited by the phrase "crime against nature". I do not think so. Aside from the fact that to be punishable a crime must be against the sovereign State of Indiana, not against something called "nature", the words do not tell anyone what behavior constitutes the crime. What is meant by "nature"? A deviation from a statistical norm or from some unannounced moral norm? The words "crime against nature" are also mere epithets. They could be used to punish whatever behavior the majority considered morally offensive or perverse without any advance notice of the kind of behavior prohibited.

Appellee makes two arguments in favor of the constitutionality of the statute. Appellee argues that although the statute does not define the acts covered by it, adequate definition has been provided over the years by this Court curing any possible defects for vagueness. In support of this contention appellee cites four cases: *Glover* v. *State* (1913), 179 Ind. 459, 101 N. E. 629; *Young* v. *State* (1923), 194 Ind. 221, 141 N. E. 309; *Sanders* v. *State* (1940), 216 Ind. 663, 25 N. E. 2d 995; *Estes* v. *State* (1964), 244 Ind. 691, 195 N. E. 2d 471. These four cases clearly demonstrate the problem that appellee claims does not exist.

In *Glover* v. *State, supra,* the appellant was charged with fellatio, *i.e.*, mouth-male genital contact between two persons. Appellant argued that the sodomy statute did not cover such acts but included only anal copulation. The Court recognized other jurisdictions were split on the issue but it held that the "broad definition" was what the Legislature intended. The Court cited eleven definitions the broadest of which was "carnal copulation by human beings with each other against nature, or with a beast". The Court said:

"In view of this fact we think we are left free to conclude that our legislature, when it passed the act of 1905, § 2374 Burns 1908, *supra,* chose rather the broad definition of the crime, *which would include those abominations within the*

*mischief of the law,* rather than the narrow one which without reason would exclude from punishment a perpetrator of what might well be considered the vilest and most degenerate of all the acts within the inclusion of the broad definition." (Emphasis added.) 179 Ind. at 465, 466.

Who could read that opinion and find a fixed meaning in the first clause of the statute? Of all the possible types of sexual activity which are within the "mischief of the statute"? Is cunnilingus covered or not?

In *Young* v. *State, supra,* the Court held that the words "abominable and detestable crime against nature" also included cunnilingus, *i.e.,* mouth-female genital contact between two persons, saying:

"We thus have the words of the statute and their meaning. The only thing left for the court to do is to sensibly apply them as their purposed use in the statute would indicate. This done, they not only cover the thought asserted by appellant, *but they have a wider meaning, the corruption of morals, the disgrace of human nature by an unnatural sexual gratification, of which reason and decency forbids a more detailed description.* They seem to be sufficiently broad and extensive to include the abominable and detestable act, cunnilingus, proved in this case." (Emphasis added.) 194 Ind. at 225, 226.

It is difficult to see any fixed meaning in this opinion.

Then in *Estes* v. *State, supra,* this Court said:

"The case of *Glover* v. *State, supra,* as heretofore stated, merely holds that the first clause within the sodomy statute, *supra,* includes the offense of *copulation of the male organ of one person with the mouth or the anus of the other. No authority has been cited nor has any come to our attention which has defined or described the offense with which we are here concerned, in any other manner.*" (Emphasis added.) 244 Ind. at 695.

This case was approved in *Phillips* v. *State* (1967), 248 Ind. 150, 222 N. E. 2d 821. That opinion could reasonably be read

to mean that the first clause of the statute includes only acts involving the male organ, thus excluding cunnilingus. We note that it is not what lawyers understand by the statute but what a "person of ordinary comprehension" can know by reading it. In this state of affairs how could anyone say that a person of ordinary comprehension could find a judicially fixed meaning in the phrase "abominable and detestable crime against nature?"

In *Sanders* v. *State, supra,* this Court held that the first clause of the statute applied to the behavior proved in the trial court but there is no way to know what behavior that was because the Court did not state any of the facts in the case. The Court said:

> "The statute in this state defines the crime as 'the abominable and detestable crime against nature with mankind or beast.' This court has held in common with the courts of other jurisdictions under similar statutes, that the statutory definition includes both common-law sodomy and acts of a bestial character whereby degraded and perverted sexual desires are sought to be gratified contrary to nature. *Glover* v. *State* (1913), 179 Ind. 459, 101 N. E. 629; *Connell* v. *State* (1939), 215 Ind. 318, 19 N. E. 2d 267; *Young* v. *State* (1924), 194 Ind. 221, 141 N. E. 309." 216 Ind. at 664, 665.

How can this case help fix the meaning of the statute even for lawyers when the opinion does not reveal what behavior was deemed punishable?

Appellee's second argument is that this Court has already determined that this statute is not void for vagueness. Appellee cites *Estes* v. *State, supra,* and *Phillips* v. *State, supra,* in support of this contention. In neither of these cases did the Court offer even one reason to support its position. The *Phillips* case merely relied on the decision in *Estes.* In *Estes* the appellant alleged the affidavit charging sodomy in the terms of the first clause of the statute was insufficient to give adequate notice. The Court held the affidavit was sufficient apparently because it included *more* than the statutory language.

The Court did not even discuss the vagueness of the first clause of the sodomy statute.

The only reason ever offered by this Court as to why this first clause of the statute is not void for vagueness is that it would offend delicate sensibilities to describe the conduct that is prohibited. *Glover* v. *State, supra.* The Court in effect has held it justifiably vague. Whatever may have been the merits of that position in 1913 it has none now.

(2) This case involves the application of the police power to regulate the private sexual conduct between consenting adults. *Griswold* v. *Conn.* (1965), 381 U. S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510, established that the specific guarantees of the federal Bill of Rights and the "penumbras formed by emanations from those guarantees" create a zone of privacy about certain human activities and relationships. The state cannot intrude on that zone without a showing of a compelling state interest in regulating the activity. *Cotner* v. *Henry,* 394 F. 2d 873 (7th Cir. 1968). I believe that private sexual conduct between consenting adults is within that constitutionally protected zone.

It is true that both *Griswold* and *Cotner* concerned the marital relationship. However, I see no valid reason to limit the right of sexual privacy to married persons. The majority opinion offers no reason why being married should make a difference in the applicability of the statute and I believe there is none. The moral preferences of the majority may not be imposed on everyone else unless there exists some harm to other persons. Sexual acts between consenting adults in private do not harm anyone else and should be free from state regulation.

Prentice, J., concurs.

NOTE.—Reported in 268 N. E. 2d 84.