540 P.2d 732

**STATE of Arizona, Appellant,**

v.

**Mearion Ray BATEMAN, Appellee.**

**No. 1 CA–CR 888.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 30, 1975.

Rehearing Denied Nov. 5, 1975.
Review Granted Jan. 20, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, Asst. Atty. Gen., Phoenix, and Charles Preimsberg, Yavapai County Atty. by Richard A. Stewart, Deputy County Atty., Prescott, for appellant.

Charles Anthony Shaw, Prescott, for appellee.

OPINION

JACOBSON, Presiding Judge.

The constitutionality of Arizona's statutes prohibiting sodomy and lewd and lascivious acts as applied to married couples is brought under attack in this appeal.

On May 21, 1974, the defendant, Mearion Ray Bateman, was charged in a two-

count information with committing anal intercourse upon his wife and forcing her to commit fellatio upon him. The defendant subsequently filed a motion to dismiss the information on the grounds that the statutes defining these crimes were unconstitutional since they did not allow a defense of consent. The motion to dismiss on constitutional grounds was taken under advisement and never expressly ruled upon.

The matter proceeded to trial before a jury on August 8, 1974. At the conclusion of the trial, the jury was instructed that:

"Consent is a defense in the infamous crime against nature [sodomy count] and to the crime of the committing of lewd and lascivious acts [fellatio count]. Any evidence which reasonably tends to show that consent is relevant and material."

Thus, the issue of whether the defendant's wife consented to the acts committed upon her was squarely presented to the jury. The jury returned verdicts of guilty as to both counts. We must assume by these verdicts that the jury found that the defendant's wife did not consent to the sexual acts performed by the defendant. The defendant does not question the sufficiency of the evidence to support such a finding of non-consent.

Following the jury's verdict, the defendant moved for a new trial, again renewing his motion to dismiss. On September 27, 1974, the trial court granted defendant's motion to dismiss, stating:

"It appearing to the court that the Arizona statutes on sodomy and lewdness violate the Arizona and U. S. Constitutions because they could violate the right to privacy, and further that this court's interpretation of the statutes to permit the defense of consent without the benefit of legislative or appellate court guidance was improper . . . ."

Both parties and this court interpret the trial court's order to mean that it was of the opinion that the Arizona statutes in question would be unconstitutional as applied to consenting married couples and that it could not supply the non-consent factor to make the statute constitutional. The trial court therefore dismissed the information. The State has appealed.

The State's position on appeal is interesting. The opening memorandum in this matter was filed by the Yavapai County Attorney's office rather than the attorney general. In that memorandum, the county attorney conceded that the statutes were unconstitutional if applied to consenting married couples, but argued that the trial court could properly interpret these statutes by supplying the non-consent element, thus rendering the statute constitutional. The defendant's answering memorandum likewise dealt with this consent issue, arguing that because of the separation of powers doctrine only the legislature could constitutionally write a valid statute making non-consenting acts as between husband and wife criminal—thus impliedly admitting that nonconsenting acts between marrieds could constitutionally be criminally prohibited.

The matter was orally argued before this court by Mr. William J. Schafer III, Chief Counsel of the Criminal Division of the Arizona Attorney General's office. At oral argument, Mr. Schafer specifically disavowed that portion of the County Attorney's opening memorandum conceding the unconstitutionality of these statutes as applied to consenting married couples and argued, with the leave of the court, that the statutes could be constitutionally applied between the defendant and his wife. Leave was granted to both the State and the defense to file supplemental memoranda on this issue.

The statutes in question, insofar as pertinent, are as follows:

A.R.S. § 13–651 (Supp.1973) provides:

"A person who commits the infamous crime against nature, with mankind or animal, shall be punished by imprisonment in the state prison for not less than five nor more than twenty years. . . ."

A.R.S. § 13–652 (Supp.1973) provides:

"A person who willfully commits, in any unnatural manner, any lewd or lascivious act upon or with the body or any part or member thereof of a male or female person, with the intent of arousing, appealing to or gratifying the lust, passion or sexual desires of either of such persons, is guilty of a felony punishable by imprisonment for not less than one nor more than five years."

A.R.S. § 13–651 prohibiting "the infamous crime against nature" has been interpreted to mean a prohibition against sodomy (anal copulation) *State v. Potts,* 75 Ariz. 211, 254 P.2d 1023 (1953), and A.R.S. § 13–652 prohibiting "lewd and lascivious acts" has been interpreted to mean, among other things a prohibition against fellatio and cunnilingus (oral copulation). *State v. Superior Court,* 78 Ariz. 367, 280 P.2d 691 (1955). Based upon these prior interpretations and the rationale of *Wainwright v. Stone,* 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973), we do not find, at least initially, that these statutes are unconstitutionally vague.

We therefore reach the main issues raised on this appeal, that is, are A.R.S. §§ 13–651 and 652[1] unconstitutional as applied to a married couple and if unconstitutional can this court interpret these statutes to make them constitutional by adding the element of non-consent.

Any discussion of the constitutionality of a statute which purports to regulate sexual activities between marrieds, must first begin with an analysis of *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). *Griswold* dealt with the constitutionality of Connecticut statutes criminalizing the use of contraceptives by married couples and criminalizing the activities of those who aided and abetted in their use. Out of *Griswold* came the conceptual premise that there exists a consti-

tutionally protected right "of privacy surrounding the marriage relationship" (Douglas, J.) or a "right of privacy in the marital relation." (Goldberg, J., concurring). Within this "fundamental" right of privacy, the majority of the *Griswold* court held that the state had no right to meddle without "showing a subordinating interest which is compelling. The law must be shown 'necessary, and not merely rationally related, to the accomplishment of a permissible state policy'." (Goldberg, J., concurring, 381 U.S. at 497, 85 S.Ct. at 1689).

However, the freedom from interference by the state with this right of privacy in the marriage relationship is not without limitation as to the "State's proper regulation of sexual promiscuity or misconduct", as Justice Goldberg points out. Likewise, in this case there is no contention that the state could not constitutionally regulate forceful, non-consenting sexual behavior even between married couples.

It would thus appear that the right of privacy in the marriage relationship does not create an all embracing fortress impregnable to the thrusts of state regulation, but rather is descriptive of only certain types of marital conduct which is protected. Obviously, under *Griswold,* one type of marital conduct which is constitutionally protected is the decisional process of whether to bear children or not. The initial question in this case then becomes whether the right of marital privacy includes how a husband and wife privately conduct their sexual activity within the confines of the marriage bed. Several cases intimate that such conduct is constitutionally protected. *See, Cotner v. Henry,* 394 F.2d 873 (7th Cir. 1968); *Buchanan v. Batchelor,* 308 F.Supp. 729 (N.D.Tex. 1970), vacated, 401 U.S. 989, 91 S.Ct. 1221, 28 L.Ed.2d 526 (1971); *State v. Lair,* 62 N.J. 388, 301 A.2d 748 (1973); *Lovisi v. Slayton,* 363 F.Supp. 620 (E.D.Va.1973); *Commonwealth v. Balthazar,* Mass., 318

1. Since both of these statutes purport to regulate sexual activities even between married couples, they will be discussed as if only one statute existed.

N.E.2d 478 (1974). Of these cases only *Cotner v. Henry, supra,* and *Lovisi v. Slayton, supra,* involved married couples, and in *Lovisi* a third party was present, "ménage à trois." Moreover, *Cotner* reaches a conclusion that consent is a defense to marital sodomy without a judicial analysis of the problem of statutory construction.

Counsel has not cited to us, nor has our individual research disclosed, any case upholding, on constitutional grounds, the conviction of consenting married couples violating statutes such as those under discussion here.[2] This is not surprising, however, for if the conduct is truly private and indeed consenting, who is to complain to bring the matter to the attention of the authorities? Moreover, if truly consenting and private, the parties are obviously accomplices in the act and corroboration requirements together with spousal testimonial immunity may deter even the most vigorous prosecutors. *See, Pruett v. State,* 463 S.W.2d 191 (Tex.Crim.App.1971); *Hughes v. State,* 14 Md.App. 497, 287 A.2d 299, cert. den., 409 U.S. 1025, 93 S.Ct. 469, 34 L.Ed.2d 317 (1972). In sum, prosecution of marrieds for these acts apparently does not occur with the frequency required to effectuate a broad appellate review.

We are thus left with the task of determining whether the right of marrieds to conduct such sexual activities in private is a "fundamental" right under *Griswold* and thus cloaked with constitutional protection against state interference. In doing so we will follow the admonition of Justice Goldberg by, as judges, not being "left at large to decide cases in light of [our] personal and private notions. Rather, [we] must look to the 'traditions and [collective] conscience of our people' to determine whether a principle is 'so rooted [there] * * * as to be ranked as fundamental.'" *Griswold v. Connecticut, supra,* Goldberg, J. concurring 381 U.S. at 493, 85 S.Ct. at 1686.

Looking then to the recorded "traditional and collective conscience of our people" it is apparent that western civilization has through the centuries abhored sodomy, fellatio and cunnilingus. *See,* Genesis 19:1–29; Deuteronomy 23:17, Leviticus 18:22–23, 20:16. As early as 1533 in the reign of Henry VIII, England enacted statutes prohibiting sodomy which became a part of American common law at the time of the American revolution. *See* 2 F. Pollock and F. Maitland, *The History of English Law* 556 (2nd Ed.1898); *Dawson v. Vance,* 329 F.Supp. 1320 (S.D.Tex.1971). There is authority, however, which indicates that oral copulation was not part of "buggery" (sodomy) at common law and its origin as a crime is of much more recent statutory vintage. *Weaver v. Territory,* 14 Ariz. 268, 127 P. 724 (1912); *Koontz v. People,* 82 Colo. 589, 263 P. 19 (1927); contra: *State v. Start,* 65 Or. 178, 132 P. 512 (1913).

Generally, however, in our opinion, the prevailing public consensus is that stated in *People v. Ragsdale,* 177 Cal.App.2d 676, 2 Cal.Rptr. 640 (1960):

> "[T]he making of unnatural sex relations a crime is imbedded in the history of the common law and finds its sanction in the broader basis of the settled mores of our western civilization." 177 Cal.App.2d at 679, 2 Cal.Rptr. at 641.

It is important, however, to focus on what is, in our opinion, the "traditional" view as to the acts actually viewed with disgust. The biblical "abominations" were sex acts between men, or between women, or between man or woman and beast. The Acts of Henry VIII were likewise directed primarily against homosexual relationship and bestiality.

Although there are reported cases of sodomy convictions involving heterosexual partners, *Connell v. State,* 215 Ind. 318, 19

---

2. The conviction of the husband and wife in *Lovisi v. Slayton, supra,* was upheld, but on the rationale that their conduct was such as to destroy the "privacy" in which the acts took place.

N.E.2d 267 (1939); *People v. Askar*, 8 Mich.App. 95, 153 N.W.2d 888 (1967), even these did not involve married couples. Our review of historical writings makes conspicuous by their absence, reference to "unnatural" sexual acts performed by married couples.[3] Admittedly our research, both historical and legal, has not been exhaustive but we are left with the definite impression that private consenting behavior between a husband and wife does not offend the "traditions and collective conscience" of society as much as like sexual behavior outside the marital confines. In this regard we note that while rape has received the sharp disapproval of society everywhere, (in some jurisdictions carrying the death penalty) at least in Arizona, this crime cannot be committed by a husband on his wife. *See* A.R.S. § 13–611.

Such an expression of society's conscience in this area has found voice in Justice Harlan's dissent in *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), quoted with approval by Justice Goldberg in concurring opinion in *Griswold v. Connecticut, supra*:

> " . . . the intimacy of husband and wife is necessarily an essential and accepted feature of the institution of marriage, an institution which the State not only must allow, but which always and in every age it has fostered and protected. It is one thing when the State exerts its power either to forbid extra-marital sexuality . . . or to say who may marry, but it is quite another when, having acknowledged a marriage and the intimacies inherent in it, it undertakes to regulate by means of the criminal law the details of that intimacy." 367 U.S. at 553, 81 S.Ct. at 1782.

 We know of no marital "intimacy" more intimate than that of how married partners consentually conduct their sexual activities. We are therefore drawn to the conclusion that such consenting sexual activity indulged in in private is one of the "fundamental" rights inherent in the marriage relationship and as such constitutionally protected from government regulation in the absence of a "compelling state interest" under the rationale of *Griswold v. Connecticut, supra*. We have looked in vain for a "compelling state interest" in regulating consenting sexual activity between marrieds although some "rational" bases present themselves, i. e., upholding human dignity, discouragement of "abnormal" sexual behavior, etc. We, therefore, hold that Arizona cannot constitutionally criminalize consenting sexual behavior carried on by a married couple in private.

 Having reached this conclusion, we must immediately tread upon the next step in our inquiry—is non-consenting sexual activity between marrieds constitutionally protected? We have previously indicated that Arizona has not seen fit to criminalize forcible rape between a husband and wife. This does not mean, however, that the state does not have the *power* to do so. In our opinion, the State does have a compelling state interest in protecting its citizens from force and violence, even if that citizen happens to be married to the perpetrator of the violence.

 We therefore hold that because of this compelling state interest, Arizona could constitutionally enact a statute which makes it a crime for a husband (or wife) to sexually assault by force or violence his wife (or her husband) either "naturally" or "unnaturally".

This brings us to the last point of our inquiry—can these Arizona statutes be made constitutional by judicially interpreting the existence of a consent defense between marrieds or, stated conversely, can these statutes be judicially interpreted as applying to only non-consenting sexual acts when married couples are involved.

 We start this inquiry by noting two basic principles. First, by reason of

---

3. The court has found only one reference by way of dicta, that a husband and wife could be prosecuted for sodomy. *Honselman v. People*, 168 Ill. 172, 48 N.E. 304 (1897).

the separation of powers doctrine, the judiciary does not possess the power of legislation and cannot judicially supply what has legislatively been omitted. Article III, Arizona Constitution; *Caldwell v. Board of Regents,* 54 Ariz. 404, 96 P.2d 401 (1939). Second, statutes are presumed to be constitutional, and if doubtful, statutes should be construed so as to preserve their constitutionality, if possible. *Selective Life Ins. Co. v. Equitable Life Assurance Soc'y. of United States,* 101 Ariz. 594, 422 P.2d 710 (1967); *Arizona Podiatry Ass'n. v. Director of Insurance,* 101 Ariz. 544, 422 P.2d 108 (1966).

■ The state urges us to apply this second principle and hold that consent is a defense to these statutes. The problem we have with this approach is what words in these statutes lend themselves to such construction? A.R.S. § 13–651 provides: "A person who commits the infamous crime against nature with mankind" is guilty of a felony. We might, by the stretch of our judicial imaginations, find the word "mankind" to be ambiguous and thus be in a position to construe that word to exclude consenting wives, but such an exercise does violence to our intellectual integrity. A.R.S. § 13–652 provides "a person who willfully commits in any unnatural manner, any lewd or lascivious act," is guilty of a felony. Likewise, a game of judicial linguistics can be played with "unnatural" to construe it to mean that consenting marriage conduct is not "unnatural" and thus supply the consent element. But such an exercise would be simply that—a game. A fair reading of these statutes compels us to the conclusion that the legislature simply did not consider consent to be a defense to these crimes. Any other interpretation would be rank judicial legislation that the trial court, upon reflection, would not indulge in, nor, conscientiously, can this court.

4. Defendant has invited the court to rule on the constitutionality of the statutes as applied to consenting adults generally, an invitation the court declines to accept. The court is

For the foregoing reasons, we hold A.R.S. §§ 13–651 and 652 if applied to sexual acts committed in private between consenting married couples [4] are unconstitutional. We further hold that the trial court erroneously instructed the jury that consent is a defense to these criminal statutes. Therefore, the judgment of the trial court dismissing the complaint is affirmed.

HAIRE, C. J., and EUBANK, J., concur.

aware, however, that the Arizona Criminal Code Commission has approved legislation decriminalizing all sex acts between consenting adults, married or not.