542 P.2d 1147

The STATE of Arizona, Appellee,

v.

Willie Edward CALLAWAY, Appellant.

Nos. 2 CA–CR 604, 2 CA–CR 642–2.

Court of Appeals of Arizona,
Division 2.

Nov. 26, 1975.

Rehearing Denied Dec. 24, 1975.

Review Granted Jan. 20, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Shirley H. Frondorf, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by Kenneth J. Peasley, Asst. Public Defender, Tucson, for appellant.

OPINION

KRUCKER, Judge.

Willie Edward Callaway was charged with sodomy, A.R.S. Sec. 13–651 (Supp.

1973), and committing a lewd and lascivious act in an unnatural manner, A.R.S. Sec. 13–652 (Supp.1973). He was tried before a jury and convicted on both counts. The trial court sentenced him to six years probation on the sodomy conviction and three to five years in the state prison on the lewd and lascivious conviction. He now appeals.

In the evening of September 13, 1974, Margaret Curlin went to the Davis Monthan NCO Club with Carmen Taylor. There they met Tom Fry and appellant. The four had numerous drinks during the evening and Curlin danced with Fry.

At about 1:25 a. m. on September 14, 1974, Curlin and Fry left the club and drove to Curlin's apartment. Taylor and appellant, who left in another car, soon joined them. Once inside the apartment, Taylor and appellant went into a bedroom while Fry and Curlin remained in the living room. Taylor and appellant started to have intercourse, but stopped when Taylor said she was in love with someone else. Taylor and appellant came out of the bedroom at Curlin's insistence.

Fry, Taylor and appellant later left Curlin's apartment together. Appellant returned in a few minutes to retrieve his white coat and stayed to eat some eggs that had been prepared earlier. Curlin testified that shortly after his return appellant grabbed her by the hair and dragged her toward the bedrooms. When she resisted, appellant threw her against the wall. He dragged her into a bedroom, deposited her on the bed, and tore off her panties and panty-hose. He then forced her to have anal and oral intercourse with him. Curlin bit his penis, whereupon he struck her in the eye and knocked her out.

Appellant denied Curlin's account of what happened after he returned to her apartment. He testified that he and Curlin started kissing in the living room, disrobed, and had consensual vaginal intercourse in one of the bedrooms. He denied that he had thrown Curlin against the wall, or

struck her in the eye, or forced her to have anal intercourse with him. He testified that in the course of their lovemaking, Curlin voluntarily placed her mouth on his penis. He admitted slapping her, but stated that he had done so merely to calm her down.

Curlin's next-door neighbor testified that he awoke to Curlin's screams at about 3:00 a. m. on the night in question. He heard something thumping against the wall and thought he heard Curlin calling his name.

Curlin awoke around 10:30 a. m. when her boyfriend arrived home. She had a black eye and numerous bruises. When police officers interviewed her, she was hysterical.

Appellant presents ten questions for review but the issue we deem dispositive of this appeal is whether A.R.S. Secs. 13–651 and 13–652 violate the constitutionally protected right of privacy. We think they do, and hold that both sections are facially void. Appellant's convictions must therefore be reversed.

■ The state contends that because the evidence indicated appellant's acts were performed without Curlin's consent, appellant has no standing to assert the right of sexual privacy possessed by consenting adults. We disagree. It is true that under *United States v. Raines,* 362 U.S. 17, 80 S. Ct. 519, 4 L.Ed.2d 524 (1960) a litigant cannot attack a statute's constitutionality based on the rights of third persons not before the court if the statute is constitutional as applied to him. This rule, however, has numerous exceptions. *United States v. Brewer,* 363 F.Supp. 606 (M.D.Pa.1973), aff'd, 491 F.2d 751 (3rd Cir. 1973). One such exception applies where a denial of standing would impair the rights of third parties who have no effective way to preserve those rights. *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). Faced with a contention similar to that made by the state in the case at bench, the New Mexico Court of Appeals in *State v. Elliott,* 88 N.M. 187, 539 P.2d 207

(1975), certiorari granted, August 11, 1975, noted:

"There is no record in New Mexico of the prosecution of openly consenting adults under the sodomy statute. Because consenting adults are not, in practice, subject to prosecution for sodomy, they are denied a forum in which to assert their own rights. . . .

The fact that consenting adults in New Mexico have not, in practice, been subject to prosecution for sodomy does not demonstrate that their rights are not violated by the sodomy statute. The threat of prosecution remains.

\* . \* \* \* \* \*

Since attack by consenting adults against infringement of their constitutional rights is impractical and unlikely, this Court can decide the constitutional question by analogy to the *Raines* exception to the rule of practice on standing to challenge a statute's constitutionality." 539 P.2d at 211.

We agree with the New Mexico Court of Appeals and hold that appellant may properly assert the rights of consenting adults.

Consideration of the merits must begin with a detailed examination of *State v. Bateman,* 25 Ariz.App. 1, 540 P.2d 732 (1975), a decision of Division One of this court. In *Bateman,* as in this case, the defendant was charged under A.R.S. Secs. 13–651 and 13–652 with sodomy and committing a lewd and lascivious act in an unnatural manner. The alleged victim was his wife. The trial court instructed the jury that consent was a defense to both crimes. The jury convicted defendant, impliedly finding that his wife had not consented to his acts. Defendant moved to dismiss the information and the trial court granted the motion, holding that A.R.S. Secs. 13–651 and 13–652 were unconstitutional as violative of the right to privacy. The trial court concluded that its earlier attempt to salvage the statutes by construing them to require lack of consent was improper.

On appeal by the state, Division One affirmed. The court examined case law from other jurisdictions and noted that it could find no case that had ever sustained on constitutional grounds the conviction of a consenting married couple under a statute similar to A.R.S. Secs. 13–651 and 13–652. It then formulated the principal issue as follows:

" . . . whether the right of marrieds to conduct such sexual activities in private is a 'fundamental' right under *Griswold* [*Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)] and thus cloaked with constitutional protection against state interference." 540 P.2d at 735.

In deciding this issue, the court stated it would look to the traditions and collective conscience of society to determine whether the right of marital sexual privacy was so rooted therein as to be deemed fundamental. After a review of the history of the legal prohibition of "unnatural" sexual acts, the court concluded that:

" . . . consenting sexual activity indulged in in private is one of the 'fundamental' rights inherent in the marriage relationship and as such constitutionally protected from government regulation in the absence of a 'compelling state interest' under the rationale of *Griswold v. Connecticut, supra.* We have looked in vain for a 'compelling state interest' in regulating consenting sexual activity between marrieds although some 'rationale' bases present themselves, i.e., upholding human dignity, discouragement of 'abnormal' sexual behavior, etc. We, therefore, hold that Arizona cannot constitutionally criminalize consenting sexual behavior carried on by a married couple in private." 540 P.2d at 736.

The court declined defendant's invitation to rule on the constitutionality of A.R.S. Secs. 13–651 and 13–652 as applied to consenting adults generally. 540 P.2d at 737, n. 4.

We agree with *Bateman* as far as it goes. Our task in this case is to resolve

the question that Division One properly declined to answer.

The United States Supreme Court first recognized the constitutional right of privacy in *Griswold v. Connecticut,* supra, stating that:

" . . . specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance. . . . Various guarantees create zones of privacy.

\* \* \* \* \* \*

. . . the right of privacy which presses for recognition here is a legitimate one." 381 U.S. at 484, 85 S.Ct. at 1681, 14 L.Ed.2d at 514–15.

Later in its opinion the court presented what many later cases have inaccurately termed a "eulogy" of the marital relationship:

"We deal with a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions." 381 U.S. at 486, 85 S. Ct. at 1682, 14 L.Ed.2d at 516.

Because of this language, may cases immediately following *Griswold* assumed that the right of privacy inhered in the marriage relationship alone. In *Pruett v. State,* 463 S.W.2d 191 (Tex.Crim.App. 1970), the court refused to strike down the Texas sodomy statute as violative of unmarried persons' right to privacy because it viewed the *Griswold* rationale as based on the marital relation. In *Washington v. Rodriguez,* 82 N.M. 428, 483 P.2d 309 (1971), defendants were prison inmates who were convicted of sodomy. The court held, inter alia, that the *Griswold* right of

privacy could not properly be applied to inmates of a penitentiary. And in *Hughes v. State,* 14 Md.App. 497, 287 A.2d 299 (1972), the court stated:

"While *Griswold* may not expressly foreclose the application of its rule to unmarried adults, its rationale clearly does not lend itself to either a heterosexual or homosexual relationship between unmarried persons. The rationale of the *Griswold* holding flows from its eulogy of the marital status and lacking such status the rule has no foundation." 287 A. 2d at 305.

In *Dixon v. State,* 256 Ind. 266, 268 N. E.2d 84 (1971), the unmarried defendant's conviction of sodomy (cunnilingus) was upheld. The majority opinion rejected defendant's contention that the statute under which he was convicted violated the right of privacy under *Griswold*. De Bruler, J., strongly dissented:

"I believe that private sexual conduct between consenting adults is within [the] constitutionally protected zone.

It is true that . . . *Griswold* . . . concerned the marital relationship. However, I see no valid reason to limit the right of sexual privacy to married persons. The majority opinion offers no reason why being married should make a difference in the applicability of the statute and I believe there is none." 268 N.E.2d at 90.

*Eisenstadt v. Baird,* 405 U.S. 438, 92 S. Ct. 1029, 31 L.Ed.2d 349 (1972) extended the right of privacy under *Griswold* far beyond the narrow view taken by *Washington, Pruett, Warner, Hughes* and *Dixon,* supra. In *Eisenstadt* the court held violative of the equal protection clause a Massachusetts statute that prohibited distribution of contraceptives to unmarried persons but not to married persons. In the course of its opinion the court stated:

"It is true that in *Griswold* the right of privacy in question inhered in the marital relationship. Yet the marital couple is not an independent entity with a mind

and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of an *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. See *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969)." 405 U.S. at 453, 92 S.Ct. at 1038, 31 L.Ed.2d at 362. (Emphasis in original).

This language makes it clear that the right of privacy is a right of all persons, whether married or not. The better reasoned cases after *Eisenstadt* have indicated that convictions of consenting adults for "unnatural" sex acts committed in private violate the right of privacy. In *Lovisi v. Slayton,* 363 F.Supp. 620 (E.D.Va.1973), the court stated in dictum:

" . . . the rationale expressed in *Eisenstadt* extends to protect the manner of sexual relations between unmarried persons. It is not marriage vows which make intimate and highly personal the sexual behavior of human beings. It is, instead, the nature of sexuality itself or something intensely private to the individual that calls forth constitutional protection.

\*   \*   \*   \*   \*   \*

. . . included among . . . protected areas, this Court concludes, are intimate sexual relations between consenting adults, carried our under secluded conditions." 363 F.Supp. at 625–26.

In *United States v. Brewer,* supra, the court stated in dictum:

"While there has been no Supreme Court decision on the precise issue of the constitutional validity of statutes aimed at preventing 'deviant sexual conduct,' the apparent trend of recent decisions would indicate that such a right among or between consenting adults does exist. The broad 'victimless' Pennsylvania sodomy statute involved in the instant case cer-

tainly cannot even claim a purpose as weighty as that of the abortion statutes struck down as unconstitutional, where harm to the fetus was brought into question.

\*   \*   \*   \*   \*   \*

If the simple question of adult consensual sodomy were involved, this Court might strike down the statute." 363 F. Supp. at 607–08.

■■■■■ We think that in view of *Griswold* and *Eisenstadt* and the cases following them, no sound argument can be made that the right of privacy in sexual conduct between consenting adults is "fundamental" only when the consenting adults are married to each other. The right of privacy is deemed fundamental because it is basic to the concept of the individual in our American culture and because it is a necessary prerequisite to the effective enjoyment of all our other fundamental rights. As *Eisenstadt* and its progeny have recognized, these reasons are wholly unrelated to the existence *vel non* of a marriage relationship. We hold accordingly that the right of sexual privacy between consenting adults is fundamental.

■■■■ In *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) the Supreme Court stated:

"Where certain 'fundamental rights' are involved, the Court has held that regulations limiting these rights may be justified only by a 'compelling state interest' . . . ." 410 U.S. at 155, 93 S.Ct. at 728, 35 L.Ed.2d at 178.

Like Division One in *Bateman,* we have "looked in vain" for a compelling state interest furthered by A.R.S. Secs. 13–651 and 13–652. We have found none and can conceive of none. *Accord, State v. Elliott,* supra. We therefore hold that the subject statutes are void as violative of the constitutional right of privacy.

■■■■ *State v. Elliott,* supra, provides an alternative ground for our decision. In *Elliott,* the defendant was convicted of

sodomy under a New Mexico penal statute. The court noted that under *Griswold* the state could not regulate private consensual sexual relations between married persons. It then held:

> "Constitutional protection from governmental interference with sexual relations of married couples must extend also to unmarried, consenting adults. To allow the Legislature to regulate sexual practices between *unmarried* consenting adults, but not between *married* persons, would be to deny equal protection of the laws to the former, contrary to the Fourteenth Amendment." (Emphasis in original) 539 P.2d at 213.

The court in *Elliott* held the New Mexico sodomy statute facially void. *Accord, People v. Rice,* 80 Misc.2d 511, 363 N.Y.S.2d 484 (1975); *People v. Johnson,* 77 Misc. 2d 889, 355 N.Y.S.2d 266 (1974). Under *Bateman,* A.R.S. Secs. 13–651 and 13–652 cannot be enforced against consenting married persons. To enforce them against consenting unmarried persons would therefore be violative of equal protection.

■ Division One held in *Bateman* that it could not salvage A.R.S. Secs. 13–651 and 13–652 by engrafting on them a requirement that the state prove lack of consent. To do so, it held, would be "rank judicial legislation that the trial court, upon reflection, would not indulge in, nor, conscientiously, can this court." 540 P.2d at 737. We agree that the statutes cannot be construed to require proof of lack of consent. Appellant's convictions must therefore be reversed.

Reversed.

HOWARD, C. J., concurs.

HATHAWAY, Judge (dissenting).

Marriage is universally recognized as the starting point for legal rights and obligations. It is the sacred foundation from which families, comprising the nation's fabric, spring. Fundamental to the marriage relationship is private, consensual sexual activity between husband and wife enjoying legal sanction and protection. Governmental intrusion into the sanctity of the marital bedroom is a violation of fundamental privacy and will not be tolerated. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *State v. Bateman,* 25 Ariz.App. 1, 540 P.2d 732 (1975). The right of privacy protects individual rights and permits legal activity (including constitutionally permissible activity where an unconstitutional statute proscribes conduct) accomplished in private. Of course, much illegal activity is accomplished by stealth and under a cloak of secrecy. Once the veil of secrecy is forsaken or legally pierced, no right of privacy arises to shield criminal forays.

In discussing marriage, the basis for the right of privacy found in *Griswold,* Justice Douglas speaking for the court, said:

> "Would we allow the police to search the sacred precincts of marital bedrooms for telltale signs of the use of contraceptives? The very idea is repulsive to the notions of privacy surrounding the marriage relationship.
> We deal with a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions." 381 U.S. at 485–86, 85 S.Ct. at 1682.

In his specially concurring opinion in *Griswold,* Justice Goldberg, joined by Chief Justice Warren and Justice Brennen, recognized the court's holding in no way impinged upon a state's proper regulation of sexual promiscuity or misconduct, then

quoted approvingly from Justice Harlan's dissent in *Poe v. Ullman,* 367 U.S. at 553, 81 S.Ct. at 1782, 6 L.Ed.2d at 1025:

> " 'Adultery, homosexuality and the like are sexual intimacies which the State forbids . . . but the intimacy of husband and wife is necessarily an essential and accepted feature of the institution of marriage, an institution which the State not only must allow, but which always and in every age it has fostered and protected. It is one thing when the State exerts its power either to forbid extra-marital sexuality . . . or to say who may marry, but it is quite another when, having acknowledged a marriage and the intimacies inherent in it, it undertakes to regulate by means of the criminal law the details of that intimacy.' " 381 U.S. at 499, 85 S.Ct. at 1689.

Thus we see marriage recognized as a fundamental institution in our society honored and protected by law. If the intimacies of sexual intercourse, regardless of marital status were protected by the right of privacy, then we must assume the effort and reasoning premising the right on the marriage relationship is in vain. Such assumption is unwarranted.

In *Paris Adult Theater I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), the Chief Justice, speaking for the court and quoting his predecessor stated, "there is a 'right of the Nation and of the States to maintain a decent society . . .,' " 413 U.S. at 59, 93 S.Ct. at 2636 quoting the dissent in *Jacobellis v. Ohio,* 378 U.S. 184, 84 S.Ct. 1676, 12 L. Ed.2d 793 (1964). The court held obscene motion pictures did not acquire constitutional immunity from state regulation simply because they were exhibited for consenting adults only. The court stated:

> "Our prior decisions recognizing a right to privacy guaranteed by the Fourteenth Amendment included 'only personal rights that can be deemed "fundamental"

or "implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288, (1937).' *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing." 413 U.S. at 65, 93 S.Ct. at 2639.

The court endorsed Mr. Justice Holmes' statement that:

> " '[T]he proper course is to recognize that a state Legislature can do whatever it sees fit to do unless it is restrained by some express prohibition in the Constitution of the United States or of the State, and that Courts should be careful not to extend such prohibitions beyond their obvious meaning by reading into them conceptions of public policy that the particular Court may happen to entertain.' *Tyson & Brother v. Banton,* 273 U.S. 418, 446, 47 S.Ct. 426, 433, 71 L.Ed. 718 [58 A.L.R. 1236] (1927) (dissenting opinion joined in by Brandeis, J.)." 413 U.S. at 60, footnote 11, 93 S.Ct. at 2637.

In *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), the court simply retained to single persons and married alike the decision whether to bear or beget a child. *State v. Elliott,* 88 N.M. 187, 539 P.2d 207 (1975), certiorari granted, heavily relied upon by the majority, is dubious authority carrying only the view of the author. One judge concurred in the result only and another expressed a strong dissent. Also see *Hughes v. State,* 14 Md. App. 497, 287 A.2d 299 (1972); *State v. Lair,* 62 N.J. 388, 301 A.2d 748 (1973).

Illicit sexual intercourse is inimical to the marriage relationship and as countless case reports attest, has begotten much grief. I cannot join my brethren embracing defendant's conduct within the fundamental liberties protected by the Constitution and cherished by Americans.